WAFFLE HOUSE, INC., Petitioner,

·v.

Cathie WILLIAMS, Respondent.

No. 07–0205.

Supreme Court of Texas.

Argued March 12, 2009.

Decided June 11, 2010.

W. Wendell Hall, Fullbright & Jaworski L.L.P., San Antonio, TX, Mark Thomas Emery, Fullbright & Jaworski L.L.P., Washington, DC, Ralph H. Duggins, Cantey & Hanger, L.L.P., Thomas S. Brandon Jr., Whitaker Chalk Swindle & Sawyer, LLP, Lynn Waller Kelly, Fort Worth, TX, for Petitioner.

Susan E. Hutchison, S. Rafe Foreman, Kern A. Lewis, Foreman, Lewis & Hutchison, P.C., Grapevine, TX, for Respondent.

Mark R. Flora, Constangy Brooks & Smith, LLC, Austin, TX, for Amicus Curiae National Council of Chain Restaurants.

Justice WILLETT delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice WAINWRIGHT, Justice GREEN, Justice JOHNSON, and Justice GUZMAN joined.

After being sexually harassed by a coworker, Cathie Williams sued her employer, Waffle House, Inc. for (1) sexual harassment under the Texas Commission on Human Rights Act (TCHRA),[1] and (2) common-law negligent supervision and retention. The jury found for Williams on both claims, and she elected to recover on the common-law claim, which afforded a far greater monetary recovery.

This case poses several issues, including this one of first impression: may a plaintiff

---

1. Courts have referred to Chapter 21 of the Labor Code as the Texas Commission on Human Rights Act (TCHRA or CHRA); however, the Commission on Human Rights has been replaced with the Texas Workforce Commission civil rights division. *See* Tex. Lab.Code § 21.0015. We use "TCHRA," "Chapter 21," and "the Act" interchangeably.

recover negligence damages for harassment covered by the TCHRA? Our view is that the TCHRA, the Legislature's specific and tailored anti-harassment remedy, is preemptive when the complained-of negligence is entwined with the complained-of harassment. Here, the alleged negligence is rooted in facts inseparable from those underlying the alleged harassment. We do not believe the Legislature's comprehensive remedial scheme allows aggrieved employees to proceed on dual tracks—one statutory and one common-law, with inconsistent procedures, standards, elements, defenses, and remedies.

A statutory remedy is not always the sole remedy, and the TCHRA does not foreclose an assault-based negligence claim arising from independent facts unrelated to sexual harassment. Harassment need not be physical, and assault need not be sexual. Nor does today's decision bar a tort claim against the harasser/assailant individually. But here, as Williams admits, her two claims against Waffle House stem from the same boorish and objectionable conduct. Where the gravamen of a plaintiff's case is sexual discrimination that lies at the heart of the TCHRA, allowing negligence damages for a TCHRA violation would eclipse the Legislature's prescribed scheme. There is one more reason the TCHRA in this case should be exclusive, not cumulative: an employer's supervision and retention duties are embedded in the broader TCHRA inquiry, which hinges liability in part on whether the employer takes prompt remedial action to halt the harassment.

As there is no common-law tort for sexual harassment in Texas, we reverse the court of appeals' judgment and remand to that court to reach the issues pertinent to Williams' TCHRA claim.

## I. Factual and Procedural Background

Williams was a Waffle House waitress from July 2001 to February 2002. Within her first week on the job, she was subjected to offensive sexual comments from Eddie Davis, a cook. Davis sometimes made the comments with his hands in his pants. He would wink at Williams, which she described as unwelcome flirting. Once, after his shift was over, Davis showed Williams a condom and laughed. He often stared at her.

On several occasions, as Williams walked by Davis, he pushed her into counters and into the grill. Once, while Williams was helping customers, Davis came up behind her, held her arms with his body pressed against her, and said, "Isn't she great, isn't she wonderful?" Davis cornered her on several other occasions. When she would reach up to put plates away, Davis would rub against her breasts with his arm. Once, when Williams was in a supply room, Davis, smirking, stood in front of her and blocked her exit. She had to duck under his arm to leave.

Williams complained to store manager Ossie Ajene several times, but the harassment continued. Williams claimed Ajene laughed when she first complained, while Ajene testified that he first heard of Davis' harassment of Williams from another employee, Bobbie Griffith. Ajene talked to Davis, who denied the allegations. Ajene moved Davis to another shift that immediately preceded the shift Williams and Davis had shared. Company policy requires that managers report complaints of harassment by calling a hotline. Ajene never called the hotline. He told Williams he preferred to handle the situation in-house.

After the shift change, Davis' and Williams' shifts occasionally overlapped. Davis would also often stay at the restau-

rant after his shift ended, to eat or pick up his paycheck. Because complaints to Ajene had not stopped the harassment, Williams complained to district manager T.J. Marshall. Marshall spoke to Davis, who again denied wrongdoing. Waffle House has a sexual-harassment policy that includes notice to employees of the hotline that allows them to make complaints of discrimination or harassment directly to corporate management. Marshall told Williams to call the hotline. Williams told Marshall she had tried but was having trouble getting through. Marshall then called the hotline for Williams. There was conflicting evidence as to whether he accidentally dialed the workers' compensation hotline or the correct hotline, but regardless no action was take by corporate management as a result of the call.

Williams also complained to Kevin Love, who replaced Ajene as store manager in December 2001. Love told Davis sexual harassment would not be tolerated, and he asked employee Griffith to report any future incidents she witnessed involving Davis and Williams.

District manager Allen Conley replaced Marshall in January 2002. Conley asked Williams to write a letter documenting her claims, which she did in February 2002. Conley did not remember exactly what he did with the letter but claimed he "processed it to somebody." Williams tried to give the letter to Love, but he initially would not accept it. Conley reported the harassment complaint to division manager Kevin Ross. No one in Waffle House corporate management got back to Williams.

Williams quit in February 2002, and claims she was constructively discharged. She filed complaints with the federal Equal Employment Opportunity Commission (EEOC) and the Texas Commission on Human Rights. Both agencies issued right-to-sue notices, in January 2003 and March 2003.

In April 2003, Williams sued Davis and Waffle House in state court, alleging sexual harassment under the TCHRA and common-law battery by Davis. She also asserted a common-law claim against Waffle House for negligent supervision and retention of Davis. Williams nonsuited Davis, and the case proceeded to trial.

On the TCHRA claim, the jury was asked whether Williams was sexually harassed under a hostile-work-environment theory (Question 1), whether Williams was constructively discharged (Question 2), whether the discharge occurred as a result of official action (Question 3), and whether Waffle House was excused under a statutory affirmative defense (Question 4). The jury, in a 10–2 verdict, answered these questions in Williams' favor, but rejected a statutory retaliation claim.

On the common-law claim for negligent supervision and retention, Williams accepts in her briefing that "there is a requirement of a separate, legally compensable tort" committed by coworker Davis. The court of appeals likewise agreed that an element of a claim for negligent supervision and retention is that "the employee committed an actionable tort." [2] Williams

---

**2.** 314 S.W.3d 1, 9 (citing *Gonzales v. Willis,* 995 S.W.2d 729, 739 (Tex.App.-San Antonio 1999, no pet.)) (holding that employer cannot be held liable for negligent hiring, retention, training, or supervision of employee unless employee committed an actionable tort), *overruled in part on other grounds by Hoffmann–La Roche Inc. v. Zeltwanger,* 144 S.W.3d 438, 447–48 (Tex.2004); *see also Brown v. Swett & Crawford of Tex., Inc.,* 178 S.W.3d 373, 384 (Tex.App.-Houston [1st Dist.] 2005, no pet.) ("To prevail on a claim for negligent hiring or supervision, the plaintiff is required to establish not only that the employer was negligent in hiring or supervising the employee, but

contends the underlying tort was not sexual harassment, as there is no common-law tort of sexual harassment,[3] but assault. The jury was asked whether Davis assaulted Williams (Question 6), and utilized the definition of simple assault under the Penal Code, which provides that an assault occurs if a person "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative."[4] The jury found an assault by Davis, but in Question 7 refused to find that Waffle House ratified the assault.[5]

The jury, instructed on "negligence," "ordinary care," and "proximate cause" in Question 8, found that Waffle House was negligent in supervising or retaining Davis, or both, and that the negligence proximately caused damage to Williams.

The jury was asked a single question (Question 9) covering compensatory damages under the common-law and statutory claims. It found past compensatory damages, consisting of "emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses," in the amount of $400,000. It found future compensatory damages of $25,000. After making additional findings of malice or reckless indifference, it awarded punitive damages of $3.46 million.

Williams elected to recover under her common-law claim. The trial court entered a judgment of $425,000 in past and future compensatory damages, $425,000 in punitive damages,[6] interest, and costs. Waffle House filed post-verdict motions, including a motion for new trial on grounds of newly discovered evidence and other grounds. The trial court denied the motions. The court of appeals affirmed the judgment,[7] and Waffle House appealed to this Court.

## II. Preemption of the Common–Law Claim

Waffle House contends, in addition to other arguments we do not reach, that Williams' negligent supervision and retention claim should fail as a matter of law because the TCHRA is the exclusive reme-

also that the employee committed an actionable tort against the plaintiff.").

3. *See Gonzales*, 995 S.W.2d at 739–40 ("Sexual harassment has never been a common law tort; as a cause of action, it is a statutory creation.") (quoting *Hays v. Patton–Tully Transp. Co.*, 844 F.Supp. 1221, 1223 (W.D.Tenn.1993)). *Gonzales* further reasoned that "[a] negligent supervision claim cannot be based solely upon an underlying claim of sexual harassment *per se*, because the effect would be to impose liability on employers for failing to prevent a harm that is not a cognizable injury under the common law." *Id.* (quoting *Hays*, 844 F.Supp. at 1223).

4. TEX. PEN.CODE § 22.01(a)(3). Several courts have observed that the elements of civil and criminal assault under Texas law are the same. *E.g., Umana v. Kroger Tex., L.P.*, 239 S.W.3d 434, 436 (Tex.App.-Dallas 2007, no pet.); *Johnson v. Davis*, 178 S.W.3d 230, 240 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). We also note that, in the civil context, Texas caselaw uses the terms "assault," "battery," and "assault and battery" interchangeably, and we intend no distinctions among these terms.

5. Had the jury found ratification by Waffle House, Williams presumably would have sought to hold Waffle House vicariously liable for Davis' assault under a common-law ratification theory set out in *Wal–Mart Stores, Inc. v. Itz*, 21 S.W.3d 456, 480–82 (Tex.App.-Austin 2000, pet. denied), and duplicated in Question 7. We express no opinion on this theory of liability.

6. The punitive damages were capped at the amount of compensatory damages. *See* TEX. CIV. PRAC. & REM.CODE § 41.008(b).

7. 314 S.W.3d at 22.

dy for workplace sexual harassment in this case. We agree.

### A. Preservation of Error

■ Williams argues that Waffle House did not preserve the exclusive-remedy argument in the courts below. The issue was preserved. In the trial court, Waffle House argued in its motions for new trial and for judgment notwithstanding the verdict that Williams' common-law claim failed because Chapter 21 provided the exclusive statutory remedy for the complained-of conduct.[8] "Because the issue presented a pure legal question which did not affect the jury's role as fact finder, the post-verdict motion was sufficient to preserve error."[9] This issue was also raised, if not extensively, in the court of appeals.[10] Waffle House also addresses the issue in this Court, quoting *Gonzales v. Willis:* "if we allowed a sexual harassment finding to supply the basis for recovery on a negligent hiring claim, the statutory procedures and limitations applicable to such claims would be rendered superfluous."[11] The issue is more fully addressed in Waffle House's post-submission brief, which includes a discussion of *City of Waco v. Lopez,*[12] a relevant case decided after the initial briefing to us.

### B. Incompatibility of Statutory and Common–Law Causes of Action

■ On this record, Williams' exclusive remedy against Waffle House is her statutory harassment claim. We have recognized that the legislative creation of a statutory remedy is not presumed to displace common-law remedies. To the contrary, abrogation of common-law claims is disfavored.[13] However, we will construe the enactment of a statutory cause of action as abrogating a common-law claim if there exists "a clear repugnance" between the two causes of action.[14]

■ The issue before us is not whether Williams has a cause of action for battery against Davis, her coworker. Although trivial, everyday physical contacts do not necessarily result in a battery,[15] "offensive contacts, or those which are con-

---

8. For example, in its motion for new trial, Waffle House argued:

> [T]he Texas Commission on Human Rights Act provides a statutory remedy for the same alleged conduct (sexual harassment) that forms the basis for Plaintiff's claim for negligent retention/supervision. *See* Tex Labor Code Ann. § 21.051 (Vernon 1996). As recently recognized by the Texas Supreme Court, a plaintiff is barred from recovery based on a common law tort where a statutory remedy is available for the same conduct that underlies the tort claim. *See* Hoffman–La [*Hoffmann–La* ] Roche Inc. v. Zeltwanger, 144 S.W.3d 438, 445–46 (Tex. 2004). Because the Texas Labor Code provides a statutory remedy for the alleged sexually harassing conduct, Plaintiff's common law claim for negligent retention/supervision is preempted.

9. *Hoffmann–La Roche Inc. v. Zeltwanger,* 144 S.W.3d 438, 450 (Tex.2004).

10. In its opening brief to the court of appeals, Waffle House, citing *Zeltwanger,* argued that "negligent supervision and retention is preempted by statute in an action involving sexual harassment," and also argued that "[a]s a matter of law, a plaintiff cannot recover damages in negligence for statutory sexual harassment."

11. 995 S.W.2d 729, 740 (Tex.App.-San Antonio 1999, no pet.).

12. 259 S.W.3d 147 (Tex.2008).

13. *Cash Am. Int'l Inc. v. Bennett,* 35 S.W.3d 12, 16 (Tex.2000).

14. *Id.* (quoting *Holmans v. Transource Polymers, Inc.,* 914 S.W.2d 189, 192 (Tex.App.-Fort Worth 1995, writ denied)).

15. *See* W. Page Keeton et al., Prosser and Keeton on the Law of Torts 42 (5th ed. 1984) ("[I]n a crowded world, a certain amount of

trary to all good manners, need not be tolerated."[16] Hence, "[t]aking indecent liberties with a person is of course a battery."[17] Neither side questions the jury's finding that Davis assaulted Williams.

The issue before us, however, is not whether Williams has a viable tort claim against a *coworker*. The issue is whether a common-law negligence action should lie against her *employer* for allowing the co-worker's tortious or criminal conduct to occur, or whether, instead, a statutory regime comprehensively addressing employer-employee relations in this context should exclusively govern. We have recognized generally that employers "have a duty to use ordinary care in providing a safe work place."[18] However, Texas courts have also held that the exclusive statutory workers' compensation scheme sometimes provides the remedy against an employer for the assault on[19] or sexual harassment of[20] an employee. Today's question is whether employer liability for unwanted sexual touching by a coworker (simple assault under Texas law given its "offensive or provocative" nature) is limited to a tailored TCHRA scheme that specifically covers employer liability for sexual harassment. We think the answer should be yes.

Davis did not cause damage "to the physical structure of the body" that would fall within the workers' compensation definition of injury.[21] His conduct was assaultive because of the sexually offensive and provocative nature of his verbal and physical contacts with Williams. Williams could have and did pursue a TCHRA sexual-harassment claim for this behavior. Her common-law claim for negligent supervision and retention was predicated on the same conduct that underlay her TCHRA claim. As Williams acknowledges in her brief: "The offensive threats and offensive touching were both an assault and sexual harassment, as found by the jury."

■■■ A common-law claim for sexual harassment does not exist under Texas

---

personal contact is inevitable, and must be accepted. Absent expression to the contrary, consent is assumed to all those ordinary contacts which are customary and reasonably necessary to the common intercourse of life...."); RESTATEMENT (SECOND) OF TORTS § 19 cmt. a (1965) (stating that in order for a contact to be "offensive" and thereby actionable as a battery, "it must be one which would offend the ordinary person.... It must, therefore, be a contact which is unwarranted by the social usages prevalent at the time and place at which it is inflicted.").

16.  W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS 42 (5th ed. 1984).

17.  *Id.* at 42 n. 36.

18.  *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex.1996).

19.  *Nasser v. Sec. Ins. Co.*, 724 S.W.2d 17, 17–18 (Tex.1987) (involving assault on restaurant employee by customer); *see also Urdiales v. Concord Techs. Del., Inc.*, 120 S.W.3d 400, 402, 405 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (involving assault on employee by supervisor); *Ins. Co. of N. Am. v. Estep*, 501 S.W.2d 352, 353 (Tex.Civ.App.-Amarillo 1973, writ ref'd n.r.e.) (involving assault on employee by another employee); *see also infra* note 65 and accompanying text (regarding exclusivity of workers' compensation remedy).

20.  *Walls Reg'l Hosp. v. Bomar*, 9 S.W.3d 805, 806 (Tex.1999) (per curiam).

21.  *See* TEX. LAB CODE § 401.011(26). We note that, under the "personal animosity" exception to the Workers' Compensation Act, coverage under that Act does not reach "injuries resulting from a dispute which has been transported into the place of employment from the injured employee's private or domestic life, at least where the animosity is not exacerbated by the employment." *Nasser*, 724 S.W.2d at 19. *See also Walls*, 9 S.W.3d at 806–07; TEX. LAB.CODE § 406.032(1)(C). We express no opinion on whether the Workers' Compensation Act would apply to the facts of today's case, an issue not before us.

law.[22] However, a statutory harassment claim exists under the TCHRA. One express purpose of the state Act is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments."[23] Sexual harassment is a recognized cause of action under Title VII and the TCHRA,[24] and Texas courts look to analogous federal law in applying the state Act.[25] There are two general types of sexual harassment: quid pro quo and hostile work environment.[26] Williams alleged the latter.

Like the workers' compensation scheme, a statutory claim of sexual harassment encompasses a unique set of substantive rules and procedures. Williams obtained favorable jury findings on her TCHRA claim, but elected to recover on her common-law claim. She argues she should be able recover for negligent supervision and retention by Waffle House since she proved an underlying assault by Davis and met the other elements of the common-law cause of action.[27] But allowing Williams to recover on her tort claim would collide with the elaborately crafted statutory scheme, a scheme that, as with the workers' compensation regime,[28] incorporates a legislative attempt to balance various interests and concerns of employees and employers.

The differences between a general common-law claim for negligence and a specific statutory claim for harassment are manifold:

■ *Administrative Review.* Unlike a common-law negligence action, a TCHRA action requires an exhaustion of administrative remedies that begins by filing a complaint with the Texas Workforce Commission civil rights division (Commis-

---

22. *See supra* note 3.

23. Tex. Lab.Code § 21.001(1). Title VII is codified at 42 U.S.C. §§ 2000e to 2000e–17.

24. *See Hoffmann–LaRoche Inc. v. Zeltwanger,* 144 S.W.3d 438, 445 (Tex.2004) (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

25. *See Zeltwanger,* 144 S.W.3d at 445–46 (noting that the TCHRA is modeled after Title VII and that "federal case law may be cited as authority in cases relating to the Texas Act"); *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 476 (Tex.2001) ("[A]nalogous federal statutes and the cases interpreting them guide our reading of the TCHRA."); *Specialty Retailers, Inc. v. DeMoranville,* 933 S.W.2d 490, 492 (Tex.1996) (per curiam) ("Because one purpose of the Commission on Human Rights Act is to bring Texas law in line with federal laws addressing discrimination, federal case law may be cited as authority.").

26. *Zeltwanger,* 144 S.W.3d at 445 n. 5.

27. Waffle House does not challenge the existence of common-law causes of action for negligent retention and supervision of an employee by an employer. We have not ruled definitively on the existence, elements, and scope of such torts and related torts such as negligent training and hiring. *But see Fifth Club, Inc. v. Ramirez,* 196 S.W.3d 788, 790, 796–97 (Tex.2006) (holding that no evidence supported jury findings that defendant was negligent in hiring and retaining independent contractor); *NationsBank, N.A. v. Dilling,* 922 S.W.2d 950, 953–54 (Tex.1996) (per curiam) (holding that no evidence supported claim that defendant was negligent in hiring employee); *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477–78 (Tex.1995) (holding that no evidence supported element of causation, "[a]ssuming without deciding that [defendant] owed the plaintiffs the duty to exercise reasonable care" to investigate, screen, or supervise its volunteer workers). Today's case does not present an occasion to address these issues.

28. *See In re Poly–America, L.P.,* 262 S.W.3d 337, 352 (Tex.2008) ("In creating the Texas Workers' Compensation Act, the Legislature carefully balanced competing interests—of employees subject to the risk of injury, employers, and insurance carriers—in an attempt to design a viable compensation system, all within constitutional limitations.").

sion).[29] Alternative dispute resolution "is encouraged to resolve disputes arising under" the TCHRA,[30] and the Commission and must "endeavor to eliminate the alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." [31] These procedures are an essential feature of the statutory framework, as we explained in *Schroeder v. Texas Iron Works, Inc.*:

> Construing the CHRA to require exhaustion is consistent with its purpose to provide for the execution of the policies embodied in Title VII. Those policies include administrative procedures involving informal conference, conciliation and persuasion, as well as judicial review of administrative action. Another important policy of Title VII is exhaustion of administrative remedies prior to litigation.[32]

The administrative phase also requires the Commission to investigate the employee's complaint and make an initial determination as to whether a violation of law occurred.[33] "These extensive investigation and resolution procedures are designed to favor conciliation over litigation...." [34] This meticulous legislative design is circumvented when a plaintiff brings a common-law cause of action for conduct that is actionable under the TCHRA.

*Limitations.* The common-law and statutory causes of action both have a two-year statute of limitations, but the timetable under the two regimes is different in two respects. First, a TCHRA complainant must first bring an administrative complaint within 180 days of the date the alleged unlawful practice occurred.[35] Second, the two-year period for bringing a court action under the TCHRA runs from the date the administrative complaint is filed,[36] while the general statute of limitations applicable to personal-injury actions requires that suit be brought "not later than two years after the day the cause of action accrues." [37]

**▬** *Substantive Elements of Claim.* To make out a statutory sexual-harassment claim, the employee must prove more than that she found the harassment offensive. The TCHRA contemplates discrimination affecting the "terms, conditions, or privileges of employment." [38] Williams alleged and obtained a jury finding that she was constructively discharged. A constructive discharge qualifies as an adverse personnel action under the TCHRA, but requires proof that the employer made the working conditions so intolerable that a reasonable person would feel compelled to resign.[39] Alternatively, the plaintiff can show that she remained in her position and endured

---

29. Tex. Lab.Code § 21.201; *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 487 (Tex. 1991), *overruled in part on other grounds by In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 310 (Tex.2010).

30. Tex. Lab.Code § 21.203(a).

31. *Id.* § 21.207(a).

32. 813 S.W.2d at 487 (citation omitted).

33. Tex. Lab.Code § 21.204.

34. *City of Waco v. Lopez*, 259 S.W.3d 147, 154 (Tex.2008).

35. Tex. Lab.Code § 21.202(a).

36. *Id.* § 21.256.

37. Tex. Civ. Prac & Rem.Code § 16.003(a).

38. Tex. Lab.Code § 21.051(1).

39. *See Pa. State Police v. Suders*, 542 U.S. 129, 141, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004); *Green v. Indus. Specialty Contractors, Inc.*, 1 S.W.3d 126, 134 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

a hostile work environment, but must show discriminatory conduct "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[40] An abusive environment can arise "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult.'"[41] Courts look to all the circumstances in determining whether a hostile work environment exists, including the frequency of the discriminatory conduct and whether it unreasonably interfered with the employee's work performance.[42] "All of the sexual hostile environment cases decided by the [United States] Supreme Court have involved patterns or allegations of extensive, longlasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment."[43] Accordingly, "single incidents should not be viewed in isolation because it is the cumulative effect of all offensive behavior that creates the work environment."[44]

In contrast, the jury in this case could find, under the charge given, negligent supervision or retention by Waffle House if it found, among other elements, an underlying assault by Davis requiring no more than a physical contact that Davis knew would be regarded "as offensive or provocative." The jury was not required to find that Davis' assault created a hostile work environment or imposed such intolerable conditions that a reasonable person would feel compelled to quit.

*Affirmative Defense.* Courts have developed unique standards for the employer's response to a statutory sexual-harassment complaint:

> For example, federal and Texas courts have recognized an affirmative defense available to employers facing hostile work environment claims when the employer (1) exercised reasonable care to prevent and correct promptly the harassing behavior and (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.[45]

*Remedies.* The remedies available under the TCHRA are unique. The Act provides for injunctive remedies with no common-law counterpart, such as affirmative injunctive relief requiring the employee to be promoted, restoring union membership, and requiring on-the-job training.[46] Compensatory and punitive

**40.** *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)); *see also Green,* 1 S.W.3d at 131.

**41.** *Harris,* 510 U.S. at 21, 114 S.Ct. 367 (quoting *Vinson,* 477 U.S. at 65, 106 S.Ct. 2399); *see also City of San Antonio v. Cancel,* 261 S.W.3d 778, 785 (Tex.App.-Amarillo 2008, pet. denied).

**42.** *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Cancel,* 261 S.W.3d at 785.

**43.** *Cancel,* 261 S.W.3d at 785 (quoting *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 264 (5th Cir.1999)).

**44.** *Id.* at 786.

**45.** *City of Waco v. Lopez,* 259 S.W.3d 147, 151–52 n. 3 (Tex.2008) (citing *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); and *Padilla v. Flying J, Inc.,* 119 S.W.3d 911, 915 (Tex.App.-Dallas 2003, no pet.)); *see also Pa. State Police v. Suders,* 542 U.S. 129, 134, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004) (setting out two-part employer affirmative defense to hostile work environment constructive discharge claim).

**46.** Tex. Lab.Code § 21.258.

damages are available, but these damages are capped at relatively modest amounts that vary with the number of employees. The cap for the sum of compensatory and punitive damages under Act ranges from $50,000 for employers with fewer than 101 employees to $300,000 for employers with more than 500 employees.[47] The compensatory and punitive damages awarded to Williams, $850,000, well exceeded the maximum of $300,000 in combined compensatory and punitive damages available under the TCHRA in suits against the largest employers. Under the Act, the jury's award of past compensatory damages of $400,000 alone exceeded the statutory cap, making punitive damages unavailable to Williams under the statute.[48]

In sum, the law governing statutory sexual harassment involves a unique set of standards and procedures. If Williams' common-law claim for negligent supervision and retention is allowed to coexist with the statutory claim, the panoply of special rules applicable to TCHRA claims could be circumvented in any case where the alleged sexual harassment included even the slightest physical contact. In any such case, the plaintiff could claim that a physical contact, even if not actionable as statutory sexual harassment, and even if not normally actionable as a common-law battery,[49] was "offensive or provocative" because it occurred in the context and course of the coworker's sexual harassment of the plaintiff. The statutory re-

quirements of exhaustion of administrative remedies and the purposes behind the administrative phase of proceedings, the relatively short statute of limitations, the limits on compensatory and punitive damages, the requirement that the plaintiff prove an abusive working environment, and all other special rules and procedures governing the statutory sexual-harassment claim could be evaded in any case where any physical contact between the plaintiff and the coworker occurred.

## C. *Lopez* and *Zeltwanger*

Our decision is consistent with, though not compelled by, two of our recent decisions. In *City of Waco v. Lopez*,[50] we held that an employee claiming he was terminated in retaliation for complaining of age and race discrimination could not bring a claim under the Whistleblower Act.[51] Instead, we held the TCHRA was his exclusive remedy because it provided a more "specific and tailored" remedy.[52] To hold otherwise, we reasoned, would allow a plaintiff to skirt the TCHRA's detailed substantive and procedural provisions. As in *Lopez*, Williams' common-law claim "falls squarely within the CHRA's ambit,"[53] that Act "implements a comprehensive administrative regime, and affords carefully constructed remedies,"[54] and allowing the alternative remedy "would render the limitations in the CHRA utterly meaningless"[55] and "defeat the CHRA's

---

47.  *Id.* § 21.2585(d).

48.  But while damages are limited as described above, Chapter 21, in contrast to the common law, provides for an award of attorney's fees and expert fees in the court's discretion. *See id.* § 21.259.

49.  *See supra* note 15.

50.  259 S.W.3d 147 (Tex.2008).

51.  *Id.* at 149. The Whistleblower Act is found at TEX. GOV'T CODE § 554.001–.010.

52.  *Lopez,* 259 S.W.3d at 156.

53.  *Id.* at 149.

54.  *Id.* at 154.

55.  *Id.*

comprehensive statutory scheme." [56] As with permitting a Whistleblower Act claim, permitting a common-law claim for negligent supervision and retention would allow plaintiffs to pick and choose among "irreconcilable and inconsistent regimes," [57] one specific and one more general, the result being that "employees would have little incentive to submit to the administrative process the Legislature considered necessary to help remedy discrimination in the workplace. Such a result would frustrate clear legislative intent." [58] While *Lopez* considered whether another statutory remedy would thwart the TCHRA, similar concerns exist if a plaintiff is permitted to pursue a common-law remedy in lieu of the Legislature's tailored and balanced statutory scheme.

In *Hoffmann–La Roche Inc. v. Zeltwanger*, we held that a common-law claim for intentional infliction of emotional distress was not available to an employee complaining of sexual harassment by a supervisor.[59] We held that if "the gravamen of the plaintiff's complaint is for sexual harassment, the plaintiff must proceed solely under a statutory claim unless there are additional facts, unrelated to sexual harassment, to support an independent tort claim for intentional infliction of emotional distress." [60] We concluded that the plaintiff's common-law tort claim was not "independent of her sexual harassment claim," [61] and that "[b]ecause the CHRA provides a remedy for the same emotional damages caused by essentially the same actions, there is no remedial gap in this case and thus no support for the award of damages under the intentional-infliction claim." [62]

*Zeltwanger* is consistent with our decision today. Williams' common-law claim is not "unrelated to" or "independent of" her statutory claim; they are both based on the same course of conduct. The unwanted sexual touching that underlies her negligence claim was assaultive because Williams regarded it as sexually inappropriate, provocative, and offensive—that is, because it amounted to sexual harassment made unlawful by the TCHRA.

*Zeltwanger* recognized that the tort of intentional infliction of emotional distress was judicially created as a "gap-filler" tort to provide a remedy where other traditional remedies are not available.[63] However, essential reasoning of *Zeltwanger* is equally applicable here. The Court was unwilling to allow a duplicative common-law tort recovery because it would undermine the limitations placed on the legislative remedy directed at the same conduct:

> [T]he tort should not be extended to thwart legislative limitations on statutory claims for mental anguish and punitive damages. By combining her sexual harassment claim with the intentional-infliction tort, Zeltwanger has circumvented, by more than thirty-fold, the legislative determination of the maximum amount that a defendant should pay for this type of conduct. In creating the new tort, we never intended that it be used to evade legislatively-imposed limitations on statutory claims.... If the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff

56. *Id.*

57. *Id.*

58. *Id.* at 155.

59. 144 S.W.3d 438, 441 (Tex.2004).

60. *Id.*

61. *Id.* at 450.

62. *Id.*

63. *See id.* at 447.

cannot maintain an intentional infliction claim regardless of whether he or she succeeds on, or even makes, a statutory claim.[64]

This reasoning supports today's decision. The gravamen of Williams' complaint is sexual discrimination in the form of a hostile or abusive work environment, a wrong the TCHRA was specifically designed to remedy. Whether viewed from the standpoint of Davis' motivations or his conduct's effect on Williams, the behavior was injurious because it was sexual harassment.

*Lopez* and *Zeltwanger* do not mandate today's result, but their essential teachings are entirely consistent with it.

### D. The "Election of Remedies" Provision

The Workers Compensation Act discussed briefly above expressly provides that its remedies for injured workers are exclusive.[65] The exclusivity of the statutory remedy is not as clear-cut in today's case because the TCHRA lacks an express exclusivity provision. However, the exclusivity of the statutory scheme can fairly be implied.[66]

The TCHRA does have a provision styled "Election of Remedies," which states:

> A person who has initiated an action in a court of competent jurisdiction or who has an action pending before an administrative agency under other law or an order or ordinance of a political subdivision of this state based on an act that would be an unlawful employment practice under this chapter may not file a complaint under this subchapter [governing administrative proceedings] for the same grievance.[67]

This provision does not mandate that all common-law causes of action, no matter how inconsistent with the statutory remedy, are preserved. First, the title of the section carries no weight, as a heading "does not limit or expand the meaning of a statute."[68] Second, the provision does not state that all alternative common-law remedies are preserved; it purports to limit relief under the statute rather than preserving or extending relief available under the common law.[69] Third, as we recognized in *Lopez*, the provision must be read against the backdrop of extensive and overlapping state and federal anti-discrimination statutes. Its obvious purpose, read

---

64. *Id.* at 447–48.

65. Tex. Lab.Code §§ 406.034(a), 408.001(a).

66. *See Cash Am. Int'l Inc. v. Bennett,* 35 S.W.3d 12, 16 (Tex.2000) (citing *Bruce v. Jim Walters Homes, Inc.,* 943 S.W.2d 121, 122–23 (Tex.App.-San Antonio 1997, writ denied), for proposition that "a statute may be interpreted as abrogating a common-law principle only when its express terms or necessary implications clearly indicate the Legislature's intent to do so"; and quoting *Coppedge v. Colonial Sav. & Loan Ass'n,* 721 S.W.2d 933, 938 (Tex. App.-Dallas 1986, writ ref'd n.r.e.), for proposition that repeal of a common-law remedy "by implication is disfavored and requires a clear repugnance between the common-law and statutory causes of action").

67. Tex. Lab.Code § 21.211.

68. Tex. Gov't Code § 311.024.

69. In this regard, the provision is different from the cumulative remedies provision of the Deceptive Trade Practices–Consumer Protection Act (DTPA). Williams cites the DTPA as an example of a statute that does not preclude common-law remedies, but that Act's cumulative remedies provision expressly states that its provisions "are not exclusive" and that DTPA remedies "are in addition to any other procedures or remedies provided for in any other law." Tex. Bus & Com.Code § 17.43.

in this context, is to provide that if a plaintiff files a federal cause of action under Title VII or another federal anti-discrimination statute, or brings a local grievance as expressly allowed under the TCHRA,[70] she cannot bring a duplicative claim under the TCHRA. As *Lopez* explained:

> In the realm of employment discrimination litigation—where federal, state, and local governments individually declare their opposition to unlawful discrimination—Section 21.211 merely means a plaintiff cannot file an administrative complaint with the CHRA after having already (1) filed a lawsuit under a federal or local anti-discrimination measure covering the same conduct or (2) begun administrative proceedings with the EEOC or local enforcement entities based on the same conduct. This provision does not manifest a legislative intent that retaliation suits premised on discriminatory conduct by a public employer—and thus undeniably covered by the CHRA—can be maintained under the Whistleblower Act instead. Such an interpretation would undermine the CHRA's express purposes. The election of remedies language simply means that a claimant can pursue a remedy for discrimination under federal law or under grievance-redress systems in existence at the local level, but pursuing either of these options precludes later initiating a CHRA complaint.[71]

Hence, Section 21.211 does not authorize all common-law causes of action covering the same conduct addressed by the TCHRA, including those that would undermine the Act or render it a dead letter.

### E. An Employer's Retention/Supervision Duty is Already Embedded Into the Broader TCHRA Analysis

■ In sexual-harassment cases, an employer is entitled to an affirmative defense if it takes prompt remedial action to stop the alleged harassment. Specifically, Waffle House is entitled to a defense if (1) it exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and (2) Williams unreasonably failed to take advantage of any preventive or corrective opportunities provided by Waffle House or to avoid harm otherwise.[72] The jury rejected this statutory affirmative defense. Thus, the target of Williams' common-law negligence claim—the efficacy of Waffle House's response to her harassment allegations and whether the company erred in supervising and retaining Davis after Williams lodged her complaints—is already part of what determines Waffle House's statutory liability under the TCHRA.

In this regard, we disagree with the dissent that Williams' negligence claim can legally and factually be separated from her TCHRA claim so as to support a separate common-law cause of action. As detailed above, Davis' conduct was injurious to Williams because it was sexual harassment, not because it caused any independent physical or other injury. The alleged negligence was Waffle House's failure to prevent Davis' harassment, which counted as assault as defined in the jury charge if Williams regarded it as sexually offensive or provocative. Every act of unwanted touching by Davis was also an act of sexual harassment; that is how he intended it, and that is how Williams regarded it.

---

**70.** Subchapter D of Chapter 21, TEX. LAB.CODE §§ 21.151–.156, provides for local enforcement of practices made unlawful by Chapter 21.

**71.** *City of Waco v. Lopez*, 259 S.W.3d 147, 155 (Tex.2008).

**72.** *See supra* note 45 and accompanying text.

Hence, all the complained-of conduct falls within the TCHRA's prohibition of gender-based discrimination.[73] It must be stressed that the dissent agrees with the Court on an essential principle: "the TCHRA is preemptive as to behavior that constitutes sexual harassment."[74] This record shows precisely such behavior—sexually crude touching and comments—not physical contact rooted in separate, non-harassment facts.

Williams repeatedly concedes the intertwined nature of her claims. For example, in responding to Waffle House's motion for new trial, Williams sets out the evidence supporting her negligence claim by relying on evidence of Waffle House's failure to adequately respond to Davis' harassing behavior.[75] In closing argument, Williams' counsel treated the negligence question as integrally related to the TCHRA claim: "Well again, that's the same thing.... And, yes, when you keep a harasser on, you are allowing them to continue to harass and to retaliate, so the answer to Question Number 8 is yes." Again,

Williams' brief acknowledges: "The offensive threats and offensive touching were both an assault and sexual harassment, as found by the jury."

In short, another reason to view Williams' TCHRA claim as exclusive rather than cumulative is that the reasonableness of Waffle House's corrective action to curb the harassment is already baked into the TCHRA analysis and a key part of the controlling statutory framework.

### F. The Common–Law Claim Fails

A claim that an employer negligently supervised and retained an employee who sexually harassed a coworker transmutes TCHRA–covered harassment into a common-law tort. Sexual harassment as a legal claim is a statutory creation of legislators, not a common-law creation of judges. As Williams' tort claim is grounded on sexual harassment, it would impose liability for failing to prevent a harm not cognizable under Texas common law. Further, recognizing a common-law cause

---

**73.** See TEX. LAB.CODE § 21.051(1). As federal and state caselaw make clear, sexual harassment is a form of unlawful workplace discrimination under Chapter 21 and Title VII. See supra notes 23–26 and accompanying text.

**74.** 313 S.W.3d at 814.

**75.** Williams argued that the evidence in support of the negligent supervision and retention claim included the following evidence (with record citations omitted):

Every single one of the Managers and District Managers at Waffle House testified that Cathie Williams reported being sexually harassed by Eddie Davis. The[y] also testified that they knew Eddie Davis needed to be stopped, that if you don't stop a harasser he will continue harassing, that if a harasser is working on shifts where there is no management around it could be a dangerous situation for the other employees, that victims of sex harassment can be severely damaged.... [Ajene] never documented anything about the sexual harass-

ment complaints and even though he conceded that the things Cathie said were "possible," he did not take any action to discipline Eddie Davis as a result of the sexual harassment.... Ajene took no effective action to stop the harassment or prevent retaliation. In fact, District Manager Conley testified that conduct like Ajene's would put Cathie Williams in danger as a result of inaction in a sexually hostile environment.... At one time, Cathie tried to give her Manager, Kevin Love, a letter that she had been told to write that gave details about the sex harassment and Mr. Love refused to accept it or even read it.... Waffle House knew what would happen to a sex harassment victim that they didn't help. Ms. Martha Hensen admitted on the witness stand that if a victim of sexual harassment reports the harassment and gets no response, that leaves the victim just continuing to be a victim with no help or assistance.

of action in this context would negate the Legislature's carefully balanced and detailed statutory regime applicable to sexual-harassment claims, and effectively repeal the TCHRA in sexual-harassment cases where physical contact occurs. For these and other reasons discussed above, we conclude that Williams' common-law claim for negligent supervision and retention must yield to the Legislature's statutory framework for sexual-harassment claims. Williams' remedy, if any, lies there.

## III. Exclusion of Evidence

■ Waffle House complains that the trial court erred in excluding trial and deposition testimony of Williams' coworker Bobbie Griffith. Griffith testified that Williams told her she had an open marriage and had engaged in extramarital relations with two men who had been in the restaurant. Griffith also testified that Williams had made "overtures" to a female Waffle House employee. The trial court excluded this evidence as unduly prejudicial.

■ The exclusion of evidence is reversible error if the complaining party shows that the trial court committed error that probably caused the rendition of an improper judgment.[76] Waffle House does not persuade us that the trial court erred in excluding Griffith's testimony. Diverting the trial's focus to an investigation of Williams' general sexual proclivities was potentially highly prejudicial.[77] The court of appeals correctly observed that while

evidence of a plaintiff's sexually provocative speech is not always inadmissible, the trial court "must carefully weigh the applicable considerations in deciding whether to admit evidence of this kind." [78]

There was no proof Davis was aware of Williams' above-described behavior as revealed to Griffith. Waffle House responds that even if Davis was unaware of this information, it was still relevant to the issue of whether Davis' conduct toward Williams was unwelcome so as to constitute harassment, and to the issue of damages. We agree with Williams that her interest, if any, in other men or women bears little relevance to whether she welcomed Davis' advances. Griffith confirmed that Williams had complained about Davis' behavior and that Griffith believed Williams was sincerely upset by Davis and fearful of him.

The trial court has discretion to determine whether the probative value of proffered evidence is substantially outweighed by the danger of unfair prejudice.[79] The trial court did not abuse its discretion in excluding Griffith's testimony.

## IV. Newly–Discovered Evidence

Waffle House complains that the trial court erred in denying its motion for new trial on grounds of newly-discovered evidence. Former supervisor Lisa Stone read about the trial in a newspaper and contacted Waffle House. Stone submitted an affidavit stating that Williams spoke frankly about her sexual conduct and had

---

**76.** *State v. Cent. Expressway Sign Assocs.,* 302 S.W.3d 866, 870 (Tex.2009).

**77.** *See Whitmire v. State,* 183 S.W.3d 522, 529 (Tex.App.-Houston [14th Dist.] 2006, pet. ref'd) ("Texas courts have held that evidence of sexual behavior outside of what society

deems acceptable is inherently inflammatory.").

**78.** 314 S.W.3d at 18 (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 69, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

**79.** Tex.R. Evid. 403.

propositioned a customer, and that Williams, who was married, had discussed having sex with an ex-boyfriend and implied she was having sex with another acquaintance.

A party seeking a new trial on grounds of newly-discovered evidence must demonstrate to the trial court that (1) the evidence has come to its knowledge since the trial, (2) its failure to discover the evidence sooner was not due to lack of diligence, (3) the evidence is not cumulative, and (4) the evidence is so material it would probably produce a different result if a new trial were granted.[80] Denial of a motion for new trial is reviewed for abuse of discretion.[81]

As with the excluded testimony of Griffith, Waffle House contends that Stone's recollections could have been offered to disprove Williams' claim that Davis' conduct was unwelcome. Waffle House does not show that the trial court would have even been inclined to admit Stone's testimony. Presumably, the court would have excluded this evidence for the same reasons it excluded Griffith's testimony. As with Griffith's proffered testimony, evidence of Williams' general sexual proclivities as described by Stone was prejudicial, and its probative value as to whether Williams welcomed sexual advances from Davis strikes us as marginal. The trial court did not abuse its discretion in denying the motion for new trial.

## V. Conclusion

The TCHRA confers both the right to be free from sexual harassment and the remedy to combat it. Where the gravamen of a plaintiff's case is TCHRA–covered harassment, the Act forecloses common-law theories predicated on the same underlying sexual-harassment facts. The root of Williams' negligence claim is that Waffle House kept around a known harasser, but this claim does not arise from separate, non-harassment conduct; it is premised on the same conduct that the TCHRA deems unlawful.

As the complained-of acts constitute actionable harassment under the TCHRA, they cannot moonlight as the basis for a negligence claim, a claim that presents far different standards, procedures, elements, defenses, and remedies. It is untenable that the Legislature would craft an elaborate anti-harassment regime so easily circumvented. The court of appeals erred in affirming the trial-court judgment on Williams' common-law claim.

Waffle House argued in the court of appeals that the TCHRA should also fail for various reasons if the common-law claim were reversed. The court of appeals did not reach the issues concerning the statutory claim,[82] nor were these issues briefed to us. Accordingly, the court of appeals' judgment is reversed, and the case is remanded to that court to address the statutory sexual-harassment issues raised by Waffle House.

Justice O'NEILL filed a dissenting opinion, in which Justice MEDINA joined.

Justice O'NEILL, joined by Justice MEDINA, dissenting.

Sexual harassment is not a tort recognized under the common law, therefore I

---

**80.** *Jackson v. Van Winkle,* 660 S.W.2d 807, 809 (Tex.1983), *overruled in part on other grounds by Moritz v. Preiss,* 121 S.W.3d 715, 721 (Tex.2003).

**81.** *Dir., State Employees Workers' Comp. Div. v. Evans,* 889 S.W.2d 266, 268 (Tex.1994).

**82.** *See* 314 S.W.3d at 15 ("We therefore do not address Waffle House's second issue of whether Williams's alternative trial theories can support the judgment.").

agree with the Court that such behavior cannot support a claim for negligent supervision. But assaultive behavior surely can, whether or not it has sexual overtones. The Court's denial of common law protection for a subset of assault that is sexually motivated adds insult to injury. In my view the Texas Commission on Human Rights Act (TCHRA) preempts negligent-supervision claims based on harassment, but it does not preempt assault-based claims merely because the perpetrator sexually harassed the victim too. That assault-based negligence claims remain viable, however, does not mean they may be used to siphon claims otherwise actionable under the TCHRA. Negligence damages cannot arise from conduct constituting sexual harassment, and evidentiary support for assault-based awards must be measured accordingly. In the case before us the trial court should have given the jury a limiting instruction to this effect, although error on this point was not preserved. Nevertheless, the evidence is legally insufficient to support all of the negligence damages the jury awarded, therefore, I would remand to the court of appeals for a proper review that excludes evidence of TCHRA-prohibited conduct. Because the scope of the Court's remand is more limited, I respectfully dissent.

## I.

This case calls for us to decide whether an employee may maintain against her employer both a statutory cause of action for sexual harassment under the TCHRA and a common law claim for negligent supervision stemming from a co-worker's assault. The Court concludes that the TCHRA is the exclusive remedy for sexual harassment in the workplace, and that Cathie Williams's negligent-supervision claim is preempted because it is merely a repackaged version of her harassment claim. I

agree with the former proposition, but not the latter.

Texas common law does not recognize a claim for sexual harassment. *See Gonzales v. Willis*, 995 S.W.2d 729, 739 (Tex.App.-San Antonio 1999, no pet.) (" 'Sexual harassment has never been a common law tort; as a cause of action, it is a statutory creation.' ") (quoting *Hays v. Patton–Tully Transp. Co.*, 844 F.Supp. 1221, 1223 (W.D.Tenn.1993)). Accordingly, a tort claim will not lie for an employer's negligent supervision of a sexual harasser. *Id.* at 739–40. It is against this backdrop that the Legislature enacted the TCHRA, with the purpose of "execut[ing] the policies of Title VII of the Civil Rights Act of 1964." TEX. LAB.CODE § 21.001(1). The TCHRA prohibits employer discrimination directed at the "terms, conditions, or privileges of employment" because of race, color, disability, religion, sex, national origin or age. TEX. LAB.CODE § 21.051(1). Sexual harassment is a form of sex discrimination prohibited by Title VII and the TCHRA. *See Hoffmann–La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex.2004); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

The TCHRA is a carefully crafted scheme designed to protect against the type of behavior Williams principally complains about, and to hold employers accountable. *See Zeltwanger*, 144 S.W.3d at 446. Allowing evidence of sexual harassment to support a negligent-supervision claim would threaten to swallow the statutory scheme. Thus, I agree with the Court that the TCHRA is preemptive as to behavior that constitutes sexual harassment. I likewise agree that a plaintiff may not avoid the TCHRA's preemptive effect by siphoning sexual-harassment evidence into an assault-based claim for negligent supervision. But it does not follow that a victim of assault should be denied common

law redress for injury the assault caused when the perpetrator sexually harasses her as well. While an employer is not an insurer of its employees' safety at work, the common law clearly imposes a duty on employers to provide a safe work place. *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex.1996). Accordingly, a claim for negligent supervision should lie if an employee's assaultive behavior is endangering another, whether or not that behavior has sexual overtones. An assault is an assault, whether it is sexually motivated or not.

Consider the effect of the Court's construct: 1. An employer fails to take reasonable action after Employee A repeatedly slams Employee B into the wall. Employee B may sue for assault-based negligent supervision. 2. An employer fails to take reasonable action after Employee A gropes Employee B before repeatedly slamming her into the wall. The TCHRA is Employee B's exclusive remedy. The Court's decision exposes an employer who tolerates a bully's assaultive conduct to greater liability under the common law than an employer who tolerates the same behavior accompanied by the indignity of sexual abuse. Surely in its statutory attempt to afford greater workplace protection from sexual harassment the Legislature did not intend to curtail relief for victims of assault.

## II.

We have long held that statutes must not be construed to abolish common law claims unless the statutory language clearly says so. *See Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex.2000); *Satterfield v. Satterfield*, 448 S.W.2d 456, 459 (Tex.1969). The text of the TCHRA contains no indication that the remedies it provides are exclusive or preempt the common law. *See* TEX. LAB.CODE § 21.001. Nor does the statute imply that the TCHRA's administrative review system precludes common law causes of action. Moreover, there is no text-based support for the exclusivity effect the Court reads into the TCHRA's election-of-remedies provision. *See* TEX. LAB.CODE § 21.211. That the provision precludes simultaneous claims in different forums based upon employment practices the TCHRA declares unlawful would seem to permit, not preclude, common law claims like assault that the TCHRA does not cover.

Neither does our decision in *City of Waco v. Lopez* support the Court's holding today. 259 S.W.3d 147 (Tex.2008). *Lopez* presented the issue whether one statute preempted another, and was resolved by application of the code-construction rule that a specific statute controls over a more general one that is irreconcilable. *Id.* at 153–54. This case, on the other hand, concerns implied statutory preemption of a common law claim, something our jurisprudence disfavors absent "clear repugnance" between the two. *Cash Am.*, 35 S.W.3d at 16 (quoting *Holmans v. Transource Polymers, Inc.*, 914 S.W.2d 189, 192 (Tex.App.-Fort Worth 1995, writ denied)). There is no repugnance between the TCHRA and an assault-based claim of negligent supervision.

Our decision in *Hoffmann–La Roche, Inc. v. Zeltwanger* is similarly inapplicable, as it was based not on the preemptive effect of a statutory scheme over the common law but on the "gap-filler" nature of the intentional-infliction-of-emotional-distress ("IIED") tort. *Zeltwanger*, 144 S.W.3d at 447 (noting that the tort of IIED exists only to " 'supplement existing forms of recovery by providing a cause of action for egregious conduct' that might otherwise go unremedied") (quoting *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex.1998)). Because in *Zeltwanger* the TCHRA covered the same

emotional damages caused by essentially the same conduct, we held that there was no remedial gap to fill. *Id.* Here, by contrast, Williams's negligence claim is based on assault, a well-established common law tort.

The TCHRA and a claim for common law assault are simply aimed at different wrongs. The purpose of the TCHRA's ban on sexual harassment is to eliminate employment discrimination and establish equal employment conditions and opportunities for both sexes in the workplace. *See* TEX. LAB.CODE § 21.001. The common law tort of assault, on the other hand, exists to redress personal injury caused by offensive physical contact or the threat of imminent bodily injury. *See Hall v. Sonic Drive–In of Angleton, Inc.*, 177 S.W.3d 636, 650 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). There is no indication that the Legislature intended the TCHRA to redress harm that results from assault, and it is difficult to square the protective goals of the legislation with the preemption of assault-based claims depending upon whether an assault is sexually motivated.

## III.

Williams agrees that her negligent-supervision claim against Waffle House must necessarily stem from Davis's tortious conduct in assaulting her. In holding Williams's negligent-supervision claim preempted, the Court focuses solely on a single element of the assault definition in the jury charge—whether the person committing the alleged assault causes physical contact with another "when [the person] knows or should reasonably believe that the other will regard the contact as offensive or provocative." But the charge also defined assault to include "intentionally or knowingly threaten[ing] another with imminent bodily injury." The evidence must be measured against the complete definition the jury was given.

The record in this case contains evidence that Davis engaged in conduct designed to intimidate Williams and cause her to fear for her safety. Williams testified that Davis physically abused her on numerous occasions, pushing her into the counters, the grill, and into the dish table on multiple occasions. On another occasion, he cornered her alone in an unlit storeroom by blocking her exit. Williams testified that she did not confront Davis directly because she "was scared of him," and a Waffle House district manager acknowledged that Davis may have presented an actual danger to Williams. Based on the charge and the evidence presented, the jury could have found that Davis's conduct went beyond "boorish," as the Court terms it, and constituted assault entirely apart from his ongoing sexual harassment. Because Williams's assault-based negligence claim was supported by independent facts unrelated to sexual harassment, I would hold that the TCHRA does not preempt it.

## IV.

Even though the TCHRA does not preempt Williams's assault-based negligence claim, however, she may not recover damages in negligence for conduct that the TCHRA deems unlawful. In other words, Williams may not recover negligence damages for TCHRA–prohibited activity. Accordingly, the jury should have been instructed that damages in negligence cannot arise from conduct that amounts to statutory sexual harassment, and the trial court erred in failing to give the jury a proper limiting instruction. *See Gonzales*, 995 S.W.2d at 738–39. However, I agree with the court of appeals that Waffle House failed to preserve error on this point. 314 S.W.3d 1.

Nevertheless, because damages for sexual harassment fall within the TCHRA's exclusive purview, the court of appeals erred in considering TCHRA–prohibited conduct in its evidentiary review of the assault-based negligence award. 314 S.W.3d 1. Although there is some evidence to support Williams's claim that she was damaged by Davis's assaultive conduct, the evidence is legally insufficient to support all of the damages the jury awarded. *See Guevara v. Ferrer*, 247 S.W.3d 662, 670 (Tex.2007). Accordingly, I would remand the case to the court of appeals to conduct a proper sufficiency review of the negligence award and, if appropriate, consider remittitur of damages that arose from TCHRA–prohibited activity. *Id.* If a proper remittitur cannot be determined, then the case should be remanded for a new trial should Williams not elect her TCHRA remedy. *Id.* Because the scope of the Court's remand is limited to review of Williams's TCHRA claims, I respectfully dissent.