**FILED**
**January 27, 2015**
**Third Court of Appeals**
**Jeffrey D. Kyle**
**Clerk**

Courts

No. 03-14-00457-CV

In the
UNITED STATES COURT of APPEALS
for the THIRD CIRCUIT

LINDA BALDWIN,
Plaintiff - Appellant

V.

ZURICH AMERICAN INSURANCE COMPANY,
Defendant - Appellee

On Appeal from the 261st District Court of Travis County, Texas
CAUSE NO. D-1-GN-13-001281, Gisela D. Triana, Judge Presiding

REPLY APPELLATE BRIEF
ON SUBMISSION
AMENDED

RECEIVED
JAN 2 7 2015
THIRD COURT OF APPEALS
JEFFREY D. KYLE

Linda Baldwin
10151 Dorrel Lane
Apartment 1164
Las Vegas, NV 89149
512 605-7638

i

*PRESS FIRMLY TO SEAL*

LAB400R Aug. 2013
7690-17-000-0669



PRIORITY MAIL

UNITED STATES
POSTAL SERVICE



U.S. POSTAGE
PAID
LAS VEGAS,NV
89130
JAN 24. '15
AMOUNT

$5.75
00045644-06

1006          78711

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; July 2013; All rights reserved.

**FROM:**

Linda Baldwin
10151 Dorrell Lane
Apartment 1164
Las Vegas, NV 891166

**TO:**

Third Courts of Appeals
P. O. Box 12547
Austin, Texas 78711-2547

**VISIT US AT USPS.COM**®
ORDER FREE SUPPLIES ONLINE



**UNITED STATES
POSTAL SERVICE**®

lly 2013
x 9.5

# TABLE OF CONTENTS

Indignity of Parties and Pro se............................................................ii

Index of Authorities ..........................................................................iv

Equitable Toll.................................................................................6

Statement of Reply Issues Presented....................................................1

Standard Review of Equitable Toll.....................................................6

Statement of the Case......................................................................2

Statement of Reply Issues Presented....................................................1

Statement of Facts..........................................................................3

Summary of the Argument.................................................................4

Argument and Authority...................................................................6

**1. Ms. Baldwin exhausted her administrative remedies, and was aggrieved by a final decision of the TWCC appeal panel, and is entitled to judicial review under Texas Labor Code Sec. 410.251. ..........................................................6**

**1. Ms. Baldwin could not have brought constitutional challenge at the administrative level............................................................................7, 8**

Prayer ...........................................................................................9

Certificate of services..................................................................... 10

APPENDEX..................................................................................11

Zurich signed affidavit .................................................................. 1

Designated Doctor Examine March 5, 2008............................................2
Designated Doctor Examine April 15, 2010............................................3

Functional Capacity Evaluation 03/10/08 (missing records)...........................4
Dr. Manish Patel Examine 04/24/08 (missing records) ...............................5
Dr. Umesh G. Gadaria Examine 05/14/08 (missing records) ..........................6

# DENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties to the court's final judgment, as well as the name and address of all and appellant as pro se, and the name of the trail judge presiding below.

## PARTIES

APPLELANT, Plaintiff, pro se
11051 Dorrell Lane
Apartment 1164
Las Vegas, Nevada 89166
Ms. Linda Baldwin, Pro se

APPLELEE Defendant:
Zurich American Insurance Company
Jessica McCarthy, Attorney for Defendant
Robert D. Stokes
Lynette Phillips
FLAHIVE, OGDEN & LATSON
P.O. Drawer 201329
Austin, Texas 78720

## TRIAL JUDGE PRESIDING BELOW

The Honorable Gisela D. Triana
200th District Court
Travis County, Texas

# TABLE OF CONTENTS PAGE

STATEMENT OF REPLY ISSUES PRESENTED FOR REVIEW1........................... 1

FACTS ...........................................................................3


ZURICH AMERCIAN INSURANCE FAILED
TO PROVIDE DR. FERNADEZ ALL OF MS. BALDWIN MEDICAL RECORDS
PURSAUNTDWC Rule 126.7 ( i )
TATEMENT OF REPLY ISSUES PRESENTED FOR REVIEW ........................... 4

EQUITABLE TOLL........................................................ 5, 6, 7


STANDARD OF REVIEW EQUITABLE TOLL ...............................6


ARGUMENT AND AUTHORITIES ...........................................6

## CASE LAW

Waffle House,Inc. v. Williams, 313 S.W.3d 796, 813 (Tex. 2010)..........................1

SEC v. Blavin, 760 F.2d 706, 711 (6th Cir. 1985)..............................................3

Rodriquez  v.  Elo, 195 F. Supp. 2d 1253. ....................................................6

Collier v. City of Pasadena ....................................................................7

## STATUE

DWC Rule 126.7 (i)......................................................................5

Texas Labor Code sec. 410.251........................................................6

## GOVERMENTMENT CODE

Code sec. 662.003.......................................................................8

PRAYER................................................................................... 9

CERTIFICATE OF SERVICE ........................................................10

APPENDEX............................................................................11

# STATEMENT OF REPLY ISSUES PRESENTED FOR REVIEW

## Issue Number One

Ms. Baldwin exhausted her administrative remedies and is seeking judicial review of a final decision of the TWCC Appeal Panel. That the Appeal Panel cited lack of jurisdiction as its reason for missing Ms. Baldwin's appeal does not deprive the district court of jurisdiction over the appeal. Ms. Baldwin's petition in the district court challenges the TWCC Appeal Panel's finding of a lack of jurisdiction.

## Reply Issue Number Two

Equitable tolling is a principle of law stating that a limitation shall not bar a claim in cases where the equitable tolling cannot be applied against the United States since the Spending Clause has been interpreted by the Supreme Court to only vest Congress with the authority to waive sovereign immunity, and statutes of limitation are interpreted as a condition on the waiver of sovereign immunitythat limit the jurisdictionof a court to hear cases against the United States.

## Reply Issue Number Three

Newly Discovered Evidence means a party seeking a new trial on grounds of newly discovered evidence must demonstrate that: (1) the evidence has come to his or her knowledge since the trial, (2) the failure to discover the evidence sooner was not due to a lack of diligence, (3) the evidence is not cumulative, and (4) the evidence is so material it would probably produce a different result if a new trial were granted. Waffle House, Inc. v. Williams, 313 S.W.3d 796, 813 (Tex. 2010).

No. 03-14-00457-CV

In the
UNITED STATES COURT of APPEALS
for the THIRD CIRCUIT

LINDA BALDWIN,
Plaintiff - Appellant

V.

ZURICH AMERICAN INSURANCE COMPANY,
Defendant - Appellee

On Appeal from the 261st District Court of Travis County, Texas
CAUSE NO. D-1-GN-13-001281, Gisela D. Triana, Judge Presiding

REPLY APPELLATE BRIEF
ON SUBMISSION
Amended

TO THE HONORABLE COURT OF APPEALS, on or about March 6, 2013, the

Honorable Judge Hurley heard the case between *Linda Baldwin v. Zurich American Insurance* on

a cause of action under workers' compensation and a misrepresentation by the carrier. At this

summary judgment hearing, the Defendant Zurich American Insurance agreed to compensate

Plaintiff Linda Baldwin and that her workers' compensation would not be affected by this Order.

The Defendant failed to disclose how Ms. Baldwin was going to be compensated for the

workers' compensation claim. The order was signed July 17, 2013, by both parties agreed. CR818. SEC v. Blavin, 760 F.2d 706, 711 (6th Cir. 1985).

On October 5, 2012, Ms. Baldwin filed her Original Petition in the Travis County District Court of Austin, Texas, under cause number D1-GN-12-003139, under tort and worker compensation claim compensable injury. CR28. On February 21, 2013, Ms. Baldwin wrote a letter to Chief of Proceedings that their decision was an error causing her not to be compensated pursuant to Texas Workers' Compensation Law. CR84. On March 22, 2013, the Assistant Commissioner, Mr. Barry, responded via letter that Ms. Baldwin was entitled to a judicial review of an Appeal Panel under Texas Labor Code section 410.251. CR82.

On April 18, 2013, Ms. Baldwin filed her second petition under cause number D-1-13-001281, after she received notice from the Division of Workers, Compensation. CR82. On May 13, 2013, the Defendant filed his Summary Judgment stated that Ms. Baldwin will be compensated and the decision of this court will not affect the decision of Ms. Baldwin's Workers' Compensation Claim. CR20.

## STATEMENT OF THE FACTS

Ms. Baldwin was employed by Extended Stay Hotels as a night attendant working as a night Attendant standing long periods of time on a hard concrete floor, withrepetitive motion in both upper extremities which later caused Ms. Baldwin chronic pain.CR108. Ms. Baldwin notified her employer on two incidents of injury. The first incident was reported on March 1, 2006, complaining of ankle pain, carrier number 2230233349. CR314.

3

The second incident was on August 20, 2007. An incident report was filled out by the employer on this date noting Ms. Baldwin's complaint of wrist pain. The insurance carrier claim number is 2230161474. CR-313.

Ms. Baldwin was examined by Ms. Nancy Howe, P.T., of Select Physical Therapy, who was a therapist designated from the carrier, Zurich American Insurance, and ordered by treating physician Dr. Petal, on or about March 10, 2008 to examine her condition. The insurance ID no. is 22301614740084. CR320. Ms. Baldwin was diagnosed with visible swelling of her ankles at 53.5 cm. Left wrist also appeared to have edema. CR292. In the physical therapy report, the injury occurred March 1, 2006 and August 20, 2008.

On March 31, 2010, the Texas Department of Insurance Division of Workers' Compensation sent a letter to the carrier, Zurich American Insurance, attention Natalie Jackson, Insurance Adjuster, asking to please provide to the designated doctor all medical records pertaining to the claimant's injuries before April 15, 2010, per DWC Rule 126.7(i). CR-338.

On July 26, 2011, Zurich Services Corporation approved Dr. William Jackson of BrownHandCenter; 3107 Oak Creek Drive, #120, Austin, Texas, authorizing treatment endoscopic assisted median nerve decompression, left forearm. Authorization #110726-218717. CR323.

On February 15, 2008, the Division of Workers' Compensation ordered Zurich American Insurance to please provide to the designated Doctor Jim Fernandez all of the medical records pertaining to Ms. Baldwin since the date of March 5, 2008.

**ZURICH AMERCIAN INSURANCE FAILED TO PROVIDE DR. FERNANDEZ ALL OF MS. BALDWIN'S MEDICAL RECORDS PURSUANT TO DWC Rule 126.7 ( I )**

4

The following records were not reviewed by Dr. Fernandez regarding the appointment March 5, 2008, and April 15, 2010,which did not reflect in his report:

1. 3/10/08 Functional Capacity Examination. CR320 and CR90

2. 05/14/08 Dr. Umesh G. Gadaria, MD., F.A.C.S. CR709, CR710, CR11, CR712 and CR713.04/24/08 Dr. Manish Patel, MD. CR238,7/1/2008 Jennifer Vasquez, OTR. CR572,6/1/2009 M.F. Lenis, M.D CR572.

On March 5, 2008, Dr. Fernandez noted that Ms. Baldwin's medical records (FCE) report was not available to him and in the presents he will be willing to amend his report,and additionally many other medical records were not available to him. The report was copied to Zurich American Insurance's Workers' Compensation on March 5, 2008. Dr. Fernandez never received the FCE report form the Carrier, Zurich American Insurance Co., by the requested date of April 15, 2010, nor did he ever receive them. CR341.

June 12, 2012, Contested Case Hearing (CCH) was held at the Austin Field Office on both cases: AU-11148351-01-CC-HD46 and AU-08103562-03-CC-HD46.On June 22, 2012the hearing officer signed an order that the Carrier Zurich Insurance is relieved of liability for August 20, 2007 and March 1, 2006 after hearing Ms. Baldwin testify that the Designated doctor do not have all her medical records in addition to reviewing all Ms. Baldwin complete medical records.CR451.

The Texas Department of Insurance, Division of Workers' Compensation ( DWC ) determined that Baldwin did not sustain a compensable injury on March 1, 2006 and that Zurich was relieved of liability. CR448-52. November 11, 2012, Zurich American Insurance co. provided a sworn affidavit all facts are true and correct. Everything provided to the designated

5

Doctor was not correct or complete pursuant to DWCRule 126.7 (i) which is false and misleading.

## EQUITABLE TOLL

On June 26, 2012, Ms. Baldwin received a letter denying her Workers' Compensation claim. CR486. Pursuant to the Texas Labor Code, Ms. Baldwin had 15 days, exclusive of weekends and holiday as listed in The Government Code sec. 662.003, to appeal the hearing officer's decision, and Ms. Baldwin filed her appeal by transmittal that was provided to her on July 10, 2012, by the DWC representative. CR85 and CR96.

## STANDARD OF REVIEW
## EQUITABLE TOLL

**Equitable tolling** is a principle of law stating that a statute of limitations shall not bar a claim in cases where the plaintiff, despite use of due diligence, could not or did not discover the injury until after the expiration of the limitations period.

For example, when pursuing one of several legal remedies, the statute of limitations on the remedies not being pursued will be equitably tolled if the plaintiff can show:

- Timely notice to the adverse party is given within applicable statute of limitations of filing first claim

- Reasonable good faith conduct on part of the plaintiff.

It has been held that equitable tolling applies principally if the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his or her rights of the defendant. Rodriquez v. Elo, 195 F. Supp. 2d 1253.

6

## ARGUMENT AND AUTHORITIES

**I.     Ms. Baldwin exhausted her administrative remedies, and was aggrieved by a final decision of the TWCC appeal panel, and is entitled to judicial review under Texas Labor Code Sec. 410.251.**

The TWCC appeal panel dismissed Ms. Baldwin's appeal because they found it to be untimely. The panel further determined that the untimely nature of the appeal deprived them of jurisdiction over the matter and, therefore, the hearing officer's decision below had become final. CR444. As such, the appeal panel's decision was a final determination of Ms. Baldwin's claim. Ms. Baldwin disagrees with the appeal panel's determination. The only recourse available to challenge that determination was to seek judicial review in the district court. When filing her Original Petition for Judicial Review, Ms. Baldwin complied with and properly pled the statutory requirement of Texas Labor Code in her second petition in which she had **equitable toll,** (Collier v. City of Pasadena) governing judicial review of a TWCC appeal panel decision. There, jurisdiction is proper in the district court. Therefore Ms Baldwin complied with statutory requirement of the Texas Labor Code sec. 410.251, which governs judicial review of a TWCC appeal panel decision, and jurisdiction is proper in the district Court

Zurich argues that because Ms. Baldwin did not file her case within the 45-day statute of limitation of the Texas Labor Code, the district court could not have jurisdiction, because this prevented Ms. Baldwin from exhausting her administrative remedies.

Therefore, because Ms. Baldwin made every effort to timely file her case and was prevented from doing so, through no fault of her own, her appeal to the appeals panel should be deemed timely.

Additionally, the court's dismissal of Ms. Baldwin's case violated her statutory and constitutional rights to judicial review. The Texas Labor Code explicitly provides for judicial

7

review of a final determination of the TWCC appeals panel. Moreover, Ms. Baldwin has a colorable constitutional claim for violation of her due process rights. The trial court's dismissal of her case denies her the opportunity for judicial review of these claims. Therefore, it was an error for the court to grant Zurich's plea and dismiss.

Ms. Baldwin also contends that the court erred by dismissing her cause of action without affording her the opportunity to conduct discovery and present evidence. Once the court decided to delve into the merits of her claim, the court should have granted Ms. Baldwin's requests to conduct discovery on the limited issue of jurisdiction and to then present any further evidence supporting jurisdiction to the court. Had Ms. Baldwin been provided this opportunity she could have presented evidence supporting not only her initial claims but also supporting possible constitutional causes of action that would provide a separate basis for jurisdiction.

The court further erred by not granting Ms. Baldwin's requests to amend her petition to include more information supportive of jurisdiction. Courts are required to provide the Plaintiff an opportunity to amend her workers' compensation claim prior to dismissal. Therefore, it was error for the court to dismiss without allowing Ms. Baldwin to amend her petition.

Ms. Baldwin's constitutional right and equitable tolling rises out - when Zurich filed its misleading sworn affidavit which misled through the legal system caused a delay in Baldwin's workers' compensation and tort claims and benefits, which caused Ms. Baldwin serious injury by its action. Therefore, she could not have brought them at this lower administrative hearing because they did not exit. Apelles's argument is that those claims are barred because she did not present them at the within 45 day statue of limitation in which, Ms. Baldwin never reached the appeal panel decision.

8

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant, Linda Baldwin,

Respectfully prays, that this honorable Court grant Appellant's point of error, that the judgment

below be reversed and this cause remanded for trial on the merits, and for such and further relief

to which Appellant may be entitled.

Respectfully Submitted,
Linda Baldwin
10151 Dorrel Lane
Apartment 1164
Las Vegas, NV 89166
512 605-7638

9

# CERTIFICATE OF SERVICE

I, Linda Baldwin, hereby certify that on this January 24 of, 2015, I served a true and correct copy of Appellant's Brief, via certified mail, return receipt requested, as follows:


Third Court of Appeal
P.O. Box 12547
Austin, Texas 78711-2547


Jessica McCarthy, Attorney for the Defendant
Robert D. Stokes
Lynette Phillips
Flahive, Ogden, Latson
P.O. Box Drawer 201329
Austin, Texas 78720

Texas Department of Insurance
Division of Worker's Compensation
7551 Metro Center Drive, Suite 100
Austin, Texas 78744-1609


Linda Baldwin
10151 Dorrell Lane
Apartment 1164
Las Vegas, NV 89166
512 605-7638

# APPENDEX

Zurich signed affidavit ............................................................. 1

Designated Doctor Examine March 5, 2008............................................2
Designated Doctor Examine April 15, 2010............................................3

Functional Capacity Evaluation 03/10/08 (missing records)..........................4
Dr. Manish Patel Examine 04/24/08 (missing records) ...............................5
Dr. Umesh G. Gadaria Examine 05/14/08 (missing records) ...........................6

*11*

CAUSE NO. D-1-GN-12-003139

| | | |
|---|---|---|
| LINDA BALDWIN, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ZURICH AMERICAN INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | 353RD DISTRICT COURT |

## AFFIDAVIT OF LYNETTE PHILLIPS

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

BEFORE ME, the undersigned Notary Public, on this day appeared Lynette Phillips ("Affiant") who upon first being duly sworn upon his oath deposed and stated:

1.  "My name is Lynette Phillips. I am over the age of twenty-one years and am fully competent to make this Affidavit. I have personal knowledge of the facts stated in this Affidavit, which are true and correct."

2.  "I am an attorney in the law firm of Flahive, Ogden & Latson, Attorneys at Law, P.C., and counsel for Zurich American Insurance Company in the matters of *Linda Baldwin v. Zurich American Insurance Company*, Docket Nos. AU-1148351-01-CC-HD46 and AU-08103562-03-CC-DH46, before the Texas Department of Insurance, Division of Workers Compensation."

3.  "The document attached hereto as Exhibit B-1 is a true and correct copy of the Decision and Order from the Texas Department of Insurance, Division of Workers Compensation, in relation to Ms. Baldwin's claims."

EXHIBIT
B

533

4.  "The documents attached hereto as Exhibit B-2 are true and correct copies of the Notice from the Appeals Panel of the Texas Department of Insurance, Division of Workers Compensation, in relation to Ms. Baldwin's claims."

Further Affiant sayeth not.

_____
LYNETTE PHILLIPS

SUBSCRIBED AND SWORN TO BEFORE ME on this _11th_ day of December 2012.

SHARISSA KARO
MY COMMISSION EXPIRES
October 3, 2016

_____
Notary Public, State of Texas

Designated Doctor Exam
Jim Fernandez, MD
888-428-1119

| Claimant | Linda Baldwin |
|---|---|
| DOI | August 20, 2007 |
| Carrier | Zurich American Insurance |
| DWC Claim number | 08103562-51 |
| Date of Service | March 5, 2008 |
| Treating Physician | Michael M. Albrecht, MD |

### History of Present Illness

I have been asked by the Texas Department of Insurance Workmen's Compensation Division to perform a Designated Doctor Evaluation for the purposes of determining maximum medical improvement, impairment rating, and the ability of the employee to return to work. This information is based on the medical information provided, as well as the interview and examination with the patient today.

Brief history: The patient is a 53-year-old female working as an attendant at a hotel. According to her history, she states her symptoms actually started in the spring of 2007, when the actual reported date of injury is 08/20/07. She states that in that spring, she started having pain in the radial aspect of the left wrist. She saw Dr. Adler, who diagnosed her with tendinitis and performed an injection. She stated that the injection helped but, after a few months the injection wore off and her pain came back four times worse than it was before. It sounds like at this time is where the report of the injury occurred. She had been followed by Dr. Albrecht, who recommended a nerve test and therapy. She subsequently saw Dr. Straus, who recommended a hand specialist. She was referred to Dr. Patel, who recommended surgery bilaterally; however, she states that she does not want surgery or injections. At this point, she feels like she is slowly improving. She has been off work since September. She complains of pain and soreness along the volar aspect of the wrist and radially, bilaterally, on the left greater than the right side. She has been wearing a brace on the left side, although not using the metal placements. Intermittently she will get numbness and tingling in both hands throughout, which is relieved with moving. Symptoms are aggravated with motion and relieved with rest and Lyrica and Celebrex. She takes 150 mg at night of Lyrica and Celebrex once a day.

Past medical history: Hypertension.

Past surgical history: Hysterectomy and left middle finger.

Allergies: None.

Medications: Diovan, Lyrica, and Celebrex.

### Medical Documents Reviewed

CR B-PG 7

776

11/16/2007. Dr. Straus. Designated Doctor Evaluation. He reports that the patient is not at MMI. The patient complains of pain, numbness and tingling in the wrists and the hands. Diagnosed with repetitive motion, probable flexor carpi radialis tendinitis. He recommended a referral to a hand surgeon and physical therapy.

Dr. Albrecht. Office notes. On 08/21/2007, diagnosed with carpal tunnel syndrome and de Quervain's. On 09/24, diagnosed with flexor carpi radialis tendinitis. On 11/01, reports he has nothing more to offer. On 12/01, refers her to Dr. Patel.

09/05/2007. Electrodiagnostic study denoting mild right sensory carpal tunnel syndrome.

09/20/2007. MRI of the right wrist, which was normal.

10/29/2007. MRI of the left wrist, which was normal.

12/17/2007. Dr. Patel. Office notes. He diagnosed her with bilateral carpal tunnel syndrome, left de Quervain's tenosynovitis, bilateral flexor carpi radialis tendinitis, and possible early cubital tunnel syndrome. He reports the patient does not want injection or surgeries. He recommended hand physical therapy and referring to Dr. McCarty, pain management. Office note on 01/17 reports that the patient was doing better. He has kept her off work and recommended work hardening and possible FCE.

## Results of Examination

The patient is oriented times three, in mild distress, cooperative with the exam. There are no skin changes, swelling, or atrophy noted. Strength testing is 5/5. Sensation is intact and reflexes are symmetrical at the bilateral upper extremities. She has a negative Tinel's at the wrist and at the elbow. She does have some mild pain at the right wrist with compression over the anterior wrist. She has positive Finkelstein's on the left, negative on the right. She has discrete tenderness along the anterior aspect of the right wrist overlying the flexor tendons, less so on the left side. Range of motion measured today using a goniometer showed both wrist extension of 50°, both wrist flexion of 50°, both wrist radial deviation of 20°, and ulnar deviation of 30° on the right and 20° on the left.

## Diagnosis

Compensable
1. Left de Quervain's tenosynovitis.
2. Bilateral flexor carpi radialis tendinitis.
3. Mild right sensory carpal tunnel syndrome diagnosed on nerve study, although this is not clinically significant.

## Questions / Purpose of Evaluation

1. Determine maximum medical improvement or MMI. The patient is slowly getting better, although still has some pain and limitations. However, the patient does not want to have any injections or surgery and wants to give this more time. Therefore, she will go ahead and be placed at maximum medical improvement for these reasons as of today's date, 03/05/08.

CR B-7G8 2

2. Determine Impairment rating. Regarding the impairment rating, we used the range of motion model today, as noted above. Regarding the right upper extremity, the right wrist extension of 50° is a two percent (2%) upper extremity impairment, flexion of 50° is a two percent (2%) upper extremity impairment, radial deviation of 20° is zero percent (0%), and ulnar deviation of 30° is zero percent. This gives a total of a four percent (4%) upper extremity impairment on the right, which translates into a two percent (2%) whole person impairment rating for the right upper extremity. On the left side, wrist extension of 50° is a two percent (2%) upper extremity impairment, flexion of 50° is two percent (2%), radial deviation of 20° is zero percent (0%), and ulnar deviation of 20° is two percent (2%). This is a total of six percent (6%) upper extremity impairment on the left, which translates into a four percent (4%) whole person impairment. Because this is bilateral involvement, the two percent (2%) and the four percent (4%) were combined, and this gives a six percent (6%) whole person impairment for this work-related injury, using the Fourth Edition of the Guides to Evaluation of Permanent Impairment.

3. Determine the ability of the employee to return to work. I did have an office note that states that she was going to have a Functional Capacity Evaluation, and she did report that she had one; however, my office was unable to obtain this and I do not have this provided by me. Therefore, I think she is able to return to a light duty status, still limiting the amount of repetitive activity that she is doing and basically doing more sedentary type work until this continues to improve. If a Functional Capacity Evaluation is presented in the future, we will be happy to amend this if necessary.

**E-signature**

Dictated but not read:
Jim Fernandez, MD
L2246
Physical Medicine and Rehabilitation. Board Certified
Designated Doctor, 4th Edition
Maximum Medical Improvement/Impairment Rating

**DISCLAIMER:**

*The opinions rendered in this case are the opinions of this evaluator only. The evaluation has been conducted on the basis of the medical examination and the documentation that is provided today with the assumption that the material is true and correct. This opinion is based on clinical assessment, examination, and the provided documentation and has been evaluated as directed by the American Medical Association Guides to Evaluation of Permanent Impairment, Fourth Edition, Fourth Printing, 1999.*

cc: Linda Baldwin
    Zurich American Insurance
    Texas Department of Insurance Workmen's Compensation Division
    Michael Albrecht, MD

Ex B PG 9

3

# Supplemental Information
# on Linda Baldwin

## Review of Medical History

## Physical Examination

Inju... ...al

Designated Doctor Examination
Jim Fernandez, MD
Ph 512-343-3668
Fx 800-482-0591

| Claimant | Linda Baldwin |
| --- | --- |
| DOI | August 20, 2007 |
| Date of Service | April 15, 2010 |
| DWC Claim number | 08103562-52 |
| Insurance Carrier | Zurich American Insurance Company |

## History of Present Illness

I have been asked by the Texas Department of Insurance, Workers' Compensation Division to perform a Designated Doctor evaluation for purposes of determining the extent of the employee's compensable injury. The conclusions are based off the interview and examination with the patient as well as past medical history.

I previously performed a Designated Doctor evaluation on 03/05/08 where I had found her to be at MMI and an impairment rating was given at that time regarding her wrist injury.

The patient had been working as a laundry attendant in a hotel, and in 2007 started having symptoms in the left radial wrist and then bilateral wrists subsequently. An injection was performed, which initially helped, but the symptoms came back. She had nerve tests, which were normal; seen by different hand specialists and subsequently placed at MMI and impairment rating. In that interval history, she states her current symptoms are pain in both hands that radiates up to the elbow. She states, in 2008, she started having some pain that would go up into the left shoulder, across the neck, and into the front of her forehead and the right side of her face, with associated numbness, tingling, and twitching sensation. She states that the right hand has numbness throughout and even into the forearm with wrist flexion, and similar symptoms on the left side. She has some mild discomfort in the left ring and little fingers, more so than the other fingers. She has neck pain that is aggravated with elevating her shoulder, and again her face twitches at intermittent times; there are no aggravating factors for this. She reports that she had seen Dr. Lown and Dr. Lown wanted tests, but was unable to perform these because his office was in a bad location for the patient. She was last seen six months ago. She reports being evaluated by her primary physician for any blood pressure or heart-related issues. Again, her job involved working at a hotel with laundry service, twisting and folding all day.

Medications: Diovan and aspirin.

251

RE:   Linda Baldwin
DOI:  08/20/2007
DOE:  04/15/2010
Page 2 of 3

## Medical Documents Reviewed

Medical information provided:

Office notes from Dr. Ira Lown for bilateral hand complaints.

Repeat nerve conduction study performed by Dr. Aung 02/10/09, which was normal;
no evidence of carpal tunnel syndrome or neuropathy or radiculopathy.

An RME performed by Dr. Pamplin on 09/21/09.

### Results of Examination
The patient is alert and oriented x3, cooperative with the exam. She has pain with left
shoulder range of motion testing; this pain is throughout the whole arm. She has a
dull sensation to light touch at the left thumb, index, middle, and little fingers, and then
the dullness switches to the right ring finger. Her reflexes are symmetrical; however,
she states that she has pain in her shoulder with testing the reflexes at the elbow on
the left side; although I am tapping on my thumb, she is complaining of pain in her
shoulder; tapping overlying the volar and radial aspect of the left wrist causes pain to
shoot up to the shoulder and the neck. Strength testing is intact.

### Questions / Purpose of Evaluation
Determine the extent of the employee's compensable injury? The compensable
injury includes the bilateral wrists only. The complaints of pain up into the shoulder
and to the neck with twitching in the face I cannot correlate these with her overuse
injury of the wrists. The proximal symptoms reported by the patient started in 2008
when her overuse injury of the wrists and hands was in 2007. I do believe she may
need further evaluation and treatment for the neck, face, and shoulder symptoms, but
these do not seem to be work related and I am uncertain of the exact etiology.

### E-signature
Dictated but not read:


Jim Fernandez, MD
L2246
Physical Medicine and Rehabilitation, Board Certified
Designated Doctor, 4th Edition
Maximum Medical Improvement/Impairment Rating



RE:   Linda Baldwin
DOI:  08/20/2007
DOE:  04/15/2010
Page 3 of 3

## DISCLAIMER:

*The opinions rendered in this case are the opinions of this evaluator only. The evaluation has been conducted on the basis of the medical examination and the documentation that is provided today with the assumption that the material is true and correct. This opinion is based on clinical assessment, examination, and the provided documentation and has been evaluated as directed by the American Medical Association Guides to Evaluation of Permanent Impairment, Fourth Edition, Fourth Printing, 1999.*

cc:  Linda Baldwin

   Ira Lown, MD

   Zurich American Insurance Company

   Texas Department of Insurance, Workers' Compensation Division

TEXAS IMPAIRMENT AND TESTING SOLUTIONS
5401 S FM 1626 STE 170-626 KYLE. TX 78640
PHONE 512 343 3668 FAX 800 482 059'

# WORKSTRATEGIES

*Keeping America on the Job!*

Select Physical Therapy Red River Austin, TX

# FUNCTIONAL CAPACITY EVALUATION

NAME: Linda Baldwin
EMPLOYER: Extended Stay Hotel
DATE OF INJURY: 8/20/07
DATE OF EVALUATION: 3/3/08
DATE OF REPORT: 3/10/08
I.D. NO.: 022R250
DIAGNOSIS: Bilateral Carpal Tunnel Syndrome

REFERRED BY: Dr. Patel
PHYSICIAN: Dr. Patel
INSURANCE CARRIER: Zurich
INSURANCE REP.: Sarah Majee
INSURANCE I.D. NO.: 22301614740084
DATE OF BIRTH: ▮▮▮▮

## VITAL SIGNS

HEIGHT: 64" WEIGHT: 230 lbs.
RESTING HEART RATE: 81 bpm
Starting Time: 9:15am Ending Time 12:45pm

HAND DOMINANCE: RIGHT
RESTING BLOOD PRESSURE: 132/80 mm/Hg

**PURPOSE OF ASSESSMENT:** Determine Physical /Functional Capability.

## CONCLUSION

The results of this evaluation indicate that Linda Baldwin functions in the SEDENTARY Physical Demand Category as defined by the U.S. Department of Labor (DOT) Work Classification Level in an 8 hour time period as indicated by her ability to lift 10# occasionally and tolerate sitting on a constant basis. She demonstrated the ability to tolerate standing, reaching to floor and desk level on a frequent basis, and walking, climbing stairs, reaching overhead, stooping, kneeling, and crouching on an occasional basis. She was also limited in her ability to perform fingering and simple grasp activities with her left hand. She was not able to tolerate crawling. She did not meet her occupational demands of lifting, pushing and pulling up to 40#, and tolerating overhead reaching, grasping and walking on a frequent basis.

During validity testing, Ms. Baldwin had a varied performance. Her Coefficients of variance during push and pull were outside of expected values, but they were within expected values during pinch testing. She terminated grip testing due to pain. She had minimal change in physiological measurements, like heart rate and blood pressure, during dynamic lifting, and did not have expected changes in body mechanics, like accessory muscle use, indicating poor effort. During postional tolerance testing, she did have an elevation in heart rate and blood pressure consistent with good effort, but again body mechanics were not consistent with increasing fatigue or pain. Overall Ms. Baldwin gave fair effort throughout the test.

Ms. Baldwin would be a good candidate for vocational retraining for an occupation that is sedentary, in order to prevent continuing strain on her injuries.

**PHYSICAL DEMAND LEVEL: SEDENTARY (U.S. Department of Labor Standards)**

Thank you for referring Linda Baldwin to Select Physical Therapy - Red River Austin, TX. If you have any further questions regarding this evaluation, please do not hesitate to contact us.

Professionally,

*Nancy Howe, PT*
Nancy Howe, PT
Physical Therapist

cc: Dr. Patel    file

## Functional Capacity Evaluation

### SUBJECTIVE HISTORY:

Linda Baldwin is a 53 year old female with the current diagnosis of Bilateral Carpal Tunnel Syndrome, onset 8/20/07. The client reports that the injury occurred in 2006 with repetitive use of both wrists performing laundry tasks and typing. Present symptoms include: Pre Test pain diagram indicates stabbing pain in bilateral wrists. Post Test pain diagram indicates stabbing pain bilateral wrists, left knee and left ankle and arch of foot.

Current medication includes: Celebrex, High blood pressure medication, anti-inflammatory.
Linda Baldwin reports the following relevant past medical history: Left foot pain since '06, sore knees, Sleeping difficulties due to wrist pain.

Previous testing and treatment for this injury/illness (as reported by patient) includes: Saw Hand Specialist, Dr. Adler, in May of 2007. Client received a cortizone injection. Physical Therapy intermittently since September 2007. She reports diagnosis of DeQuervain's tenosynovitis by her current doctor and has been given a thumb spica splint.

Linda Baldwin reported moderate pain at an intensity of 6 (0 = no pain; 1,2,3 = low; 4,5,6 = moderate; 7,8,9 = severe 10 = emergency pain). She reported that the pain ranges from 0 at best to 10 at its worst. She stated that any movement aggravates left wrist symptoms, and that medication and rest provides relief. Perceived abilities include: sitting unlimited minutes, standing 30 minutes, walking 30 minutes, driving 30 minutes, and lifting 2 lbs.

The patient is independent with activities of daily living (ADL's) including: When wearing brace, client reports being able to perform ADLs such as dressing and bathing independently. She is able to cook easy meals involving the microwave and crockpot. She is unable to chop or stir during food preparation. She is able to perform light housework, but uses compensation techniques, like using her feet to wipe the kitchen floor, to perform heavier housework. She does not have outside help for daily tasks.

She describes a typical day as: Reading her bible, sitting and resting her hands. Linda Baldwin was transported by cab to the FCE appointment today.

Additional subjective information includes: (N/A)

**VOCATIONAL/JOB HISTORY:** Linda Baldwin is currently not working. She is employed as a Night Laundry at Extended Hotels. No formal job description available. Client has worked for this employer for 4 years. Her last day of full duty was 9/4/07, and she has not returned in any capacity. Client was a quality inspector for IBM for 20 years and worked in the healthcare field as a CNA. Her highest level of education includes some classes at a Junior College and technical training.

## PHYSICAL DEMAND CATEGORY (U.S. Department of Labor, Dictionary of Occupational Titles)

**Sedentary**
Exerting up to 10 lbs. of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time to lift, carry, push, pull or otherwise move objects, including human body.

**Light**
Exerting up to 20 lbs. force occasionally, and/or up to 10 lbs. force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work.

**Medium**
Exerting 20 lbs. to 50 lbs. of force occasionally, and/or 10 lbs. to 25 lbs. of force frequently, and/or greater than negligible up to 10 lbs. of force constantly to move objects. Physical Demand requirements are in excess of those for Light Work.

**Heavy**
Exerting 50 lbs. to 100 lbs. of force occasionally, and/or 25 lbs. to 50 lbs. of force frequently, and/or 10 lbs. to 20 lbs. of force constantly to move objects. Physical Demand requirements are in excess of those for Medium Work.

**Very Heavy**
Exerting in excess of 100 lbs. of force occasionally, and/or in excess of 50 lbs. of force frequently, and/or in excess of 20

ns of force constantly to move objects. Physical Demand requirements are in excess of those for Heavy Work.

## MUSCULOSKELETAL SCREENING SUMMARY

Gait:               Bilateral shortened step length resulting in shuffling gait pattern.

Posture:            Standing: Increased lumbar lordosis, otherwise WNL.

Soft Tissue:        Left ankle with visible swelling medial and lateral to talus, girth measurements of ankles are
                    equal at 53.5 cm. Left wrist also appears to have edema.

Flexibility:        Bilateral minimal hamstring tightness.

Range of Motion:    Bilateral upper and lower extremity range of motion was WNL. Lumbar and Cervical spine
                    ROM was also WNL.

Strength:           Bilateral upper extremity strength was 3+/5 with all directions tested. Client reported pain with
                    resisted thumb extension.
                    Bilateral lower extremity strength was 4/5 with all directions tested.
                    Strength deficits not consistent with myotomal weakness.

Neurological:       Diminished reflexes bilaterally upper and lower extremities.

Additional Testing:


## ENDURANCE / AEROBIC CAPACITY

Sub-Maximal Treadmill Test        ☐ Completed Test        ☒ Incomplete Test        ☐ Not Tested

    Classification:  N/A                N/A   ml/kg/min          N/A METS

    HR Increase:  N/A          Respiration Increase: N/A          Blood Pressure:  N/A mmHg

Comments: Client terminated Treadmill test after two minutes because she felt that she was unable to hold onto the
arm rails, and she felt unsafe walking on the treadmill without holding on for balance.

## MATERIAL HANDLING

### Waist to Shoulder Dynamic Lift Test

| Occasional Lift | Heart Rate | RPL | RFT | Frequent Lift | Heart Rate | RPL | RFT |
|---|---|---|---|---|---|---|---|
| 10 lbs. | 85 bpm | 3 | Pain | 10 lbs. | 94 bpm | 6 | Pain |
| Start Heart Rate | 76 bpm | | HR Increase: Yes | Start Heart Rate: | 86 bpm | HR Increase: No | |
| Comments: | Please refer to FOCUS Report for details. | | | | | | |

### Floor to Waist Dynamic Lift Test

| Occasional Lift | Heart Rate | RPL | RFT | Frequent Lift | Heart Rate | RPL | RFT |
|---|---|---|---|---|---|---|---|
| 20 lbs. | 87 bpm | 9 | Pain | 10 lbs. | 96 bpm | 7 | Pain |
| Start Heart Rate | 80 bpm | | HR Increase: Yes | Start Heart Rate: | 82 bpm | HR Increase: Yes | |
| Comments: | Please refer to FOCUS Report for details. | | | | | | |

### Floor to Shoulder Dynamic Lift Test

| Occasional Lift | Heart Rate | RPL | RFT | Frequent Lift | Heart Rate | RPL | RFT |
|---|---|---|---|---|---|---|---|
| 10 lbs. | 94 bpm | 8 | Pain | 0 lbs. | 98 bpm | | Pain |
| Start Heart Rate | 82 bpm | | HR Increase: Yes | Start Heart Rate: | 95 bpm | HR Increase: No | |
| Comments: | Please refer to FOCUS Report for details. | | | | | | |

**Lift Capacity Performance:**    Inconsistent

Expected Linear Heart Rate Increase Minimal changes in body mechanics that would be consistent with pain or fatigue noted during dynamic lifting. Lifts were terminated due to subjective complaints of "discomfort" in wrist.

### Carry Testing

| Occasional Carry | Heart Rate | RPL | RFT | Frequent Carry | Heart Rate | RPL | RFT |
|---|---|---|---|---|---|---|---|
| 10 lbs. Bimanual | 90 bpm | 6 | Max Carry | NA lbs. | NA bpm | NA | |
| N/A lbs. Right | N/A bpm | N/A | N/A | N/A lbs. | N/A bpm | N/A | N/A |
| N/A lbs. Left | N/A bpm | N/A | N/A | N/A lbs. | N/A bpm | N/A | N/A |
| Start Heart Rate | 89 bpm | | HR Increase: Yes | Start Heart Rate: | NA bpm | HR Increase: | |
| Comments: | 25' Distance. See FOCUS Report for details of occasional carry. Frequent carry tested during positional tolerance testing with 10# box, but client was able to perform carry for only 3 repetitions. | | | | | | |

### Push / Pull Testing

| Occasional Push | | Occasional Pull | Frequent Push/Pull | Heart Rate | RPL | RFT |
|---|---|---|---|---|---|---|
| 20 lbs. | | 25 lbs. | NA lbs. | NA bpm | NA | |
| Peak Heart Rate: 85 bpm | | Peak Heart Rate: 80 bpm | Start Heart Rate: | NA bpm | HR Increase: | |
| Comments: | See FOCUS Report for details of occasional push and pull. Frequent push/pull not tested during positional tolerance testing due to inability to lower weight sufficiently. | | | | | |

### Additional Testing

| Occasional N/A | Heart Rate | RPL | RFT | Frequent N/A | Heart Rate | RPL | RFT |
|---|---|---|---|---|---|---|---|
| N/A lbs. | N/A bpm | N/A | N/A | N/A lbs. | N/A bpm | N/A | N/A |
| Start Heart Rate | N/A bpm | | HR Increase: N/A | Start Heart Rate: | N/A bpm | HR Increase: N/A | |
| Comments: | N/A | | | | | | |

*RPL – Rate of Perceived Load      *RFT – Reason for Termination

**Post Material Handling Blood Pressure:** Pretest 138/80 mmHg Post test 145/75 mmHg

Re: Linda Baldwin    DOB:     Insurance I.D. No.: 72301614740084

## POSITIONAL TOLERANCE:

| | Frequency | Comments |
|---|---|---|
| Sitting | Constant | No deficit observed. |
| Standing | Frequent | No deficit observed. |
| Walking | Occasional | No deficit observed. |
| Stair Climbing | Occasional | No deficit observed. |
| Climb Ladders | Not Tested | No deficit observed. |
| Reach Desk Level | Frequent | No deficit observed. |
| Reach Overhead | Occasional | No deficit observed. |
| Reach Floor Level | Frequent | No deficit observed. |
| Balance | Frequent | No deficit observed. |
| Stoop | Occasional | No deficit observed. |
| Kneel | Occasional | No deficit observed. |
| Crouch | Occasional | No deficit observed. |
| Crawl | Unable | Attempted and unable to assume position. |

## MANIPULATIVE ABILITY:

| | | Frequency | Comments |
|---|---|---|---|
| R | Object Handling | Frequent | No deficit observed. |
| L | Object Handling | Frequent | No deficit observed. |
| R | Fingering | Frequent | No deficit observed. |
| L | Fingering | Occasional | No deficit observed. |
| R | Simple Hand Grasp | Frequent | No deficit observed. |
| L | Simple Hand Grasp | Occasional | No deficit observed. |
| R | Firm Hand Grasp | Frequent | No deficit observed. |
| L | Firm Hand Grasp | Frequent | No deficit observed. |
| R | Fine/Gross Manipulation | Frequent | No deficit observed. |
| L | Fine/Gross Manipulation | Frequent | No deficit observed. |

Additional Positional and Postural Tolerance Comments: Client completed 3 positional tolerance circuits in 25 minutes, terminating due to increased pain in knees, left foot and bilateral wrists. She attempted, but was not able to, tolerate crawling due to wrist pain. She was consistently (through all three circuits) able to tolerate 15 seconds during peg moving activities using her left hand before stopping due to left wrist irritation. She terminated kneeling after 40 seconds (HR = 95 bpm) in the first circuit, one minute in the second circuit, and 25 seconds (HR = 88 bpm) in the third circuit due to knee pain. She terminated overhead reach after 15 seconds (HR = 90 bpm) in the first circuit, one minute in the second circuit, and 55 seconds (HR = 86 bpm) in the third circuit due to increased bilateral wrist pain. She terminated crouching after 40 seconds (HR = 88 bpm) in the first circuit, 15 seconds (HR = 96 bpm) in the second circuit, and 40 seconds (HR = 90 bpm) in the third circuit. Her overall pace was slow with minimal change in body mechanics consistent with fatigue or increasing pain levels. She did, however, have an increase in blood pressure, heart rate and respiration rate, indicating good effort. Beginning blood pressure was 135/75 mmHg and beginning heart rate was 73 bpm. Ending blood pressure was 150/70 mmHg and ending heart rate was 91 bpm. Highest heart rate was 116 bpm.

**POST TEST VITAL SIGNS:**    Heart Rate: 91 bpm    Blood Pressure: 150/70 mm/Hg

**POST TEST PAIN LEVEL:**    6/10

**ADDITIONAL INFORMATION:** NA

**LINDA BALDWIN**                                    DOB:                                    24 April 2008

Ms. Baldwin continues to have symptoms, and she feels like they are actually getting worse. She was given an impairment rating. However, she feels, and I agree with her, that she is not at MMI.

EXAM:            Physical examination reveals she still has a positive Tinel's over the median nerves bilaterally as well as diffuse pain with deep palpation of the flexor tendons at the wrist, as well as over her extensor tendons in both hands.

IMPRESSION:        1.        Bilateral carpal tunnel syndrome;
                  2.        Bilateral hand and wrist extensor/flexor tenosynovitis.

PLAN:        I discussed the diagnosis with the patient. She did not really get all of her iontophoresis treatments due to some delay in the insurance or getting the medication. She does have some refills on that, and I wrote her a new prescription to go back and get the iontophoresis treatments with a therapist. In addition, I sent her back to Dr. Powell for a repeat nerve conduction study. Work status per treating physician. I will see the patient back in four weeks for re-evaluation.


Manish V. Patel, M.D.
Board Certified in Orthopaedic Surgery
Fellowship Trained in Hand and Upper Extremity Surgery

MVP:kms/rcd

DD: 042508
DT: 042508

238

Inju...      ...al
                         , ii

       ...  . ... . ...

IMPRESSION:     1.    Probable bilateral carpal tunnel syndrome, mild, worse on the left than the right;
                2.    De Quervain's tenosynovitis, left wrist;
                3.    Flexor extensor carpi radialis tendonitis, both wrists;
                4.    Possible early onset cubital tunnel syndrome, both sides, more notable on the left than the right.

PLAN:      At this point, the patient has vehemently noted she does not want any type of surgical intervention. She is very concerned about the possible complications of that surgery. The patient also notes that at this point she does not want another injection, specifically at the carpal tunnel syndrome, because she thinks it may make her symptoms worse. After spending greater than 30 minutes with this patient during her interview, we are going to start off with a change in anti-inflammatory. We are going to go back to the Celebrex. She was given a prescription for this with subsequent refills and samples. She was counseled on the effects. Also, we are going to have her go back to physical therapy again. This time we are going to an upper extremity specialist for more in-depth treatment of both hands and wrists. The patient was counseled that if this fails to improve her condition, she would most likely need or should consider very seriously injection either into the carpal tunnel area or the tendon areas to help relieve the inflammation in those regions. However, we are going to try this initially with formalized physical therapy and have recommended iontophoresis with dexamethasone which can be pushed through the skin to help facilitate the delivery of this medication. Also, the patient was given samples and a prescription for Lyrica 75 mg to be taken two by mouth every night before bed for a dose of 150 mg to help with the pain that she is having, as well. We will have her check back with us in one month for follow-up visit. In the interim, we are going to have her seen by Dr. McCarty's office, a multidisciplinary pain management specialist, because with her history of flat affect and continued problems, it is possible she may be suffering from depressive episodes. We will get a referral to his office as soon as possible.

William Fox, P.A.-C.:kms/rcd

DD: 121807
DT: 122007

Manish V. Patel, M.D.
Board Certified in Orthopaedic Surgery
Fellowship Trained in Hand and Upper Extremity Surgery

MVP:kms/rcd

05/14/08
BALDWIN, LINDA
INITIAL OFFICE VISIT / NEW PATIENT
Page three

DIAGNOSIS: I believe this patient clinically shows the following: 1) bilateral carpal tunnel syndrome 2) bilateral nerve compression of the elbow with anterior interosseous nerve compression 3) bilateral de Quervain's syndrome 4) flexor carpi radial tendonitis.

RECOMMENDATION/DISCUSSION: I will attempt to obtain patient's other medical records for review so I can complete evaluation on this patient. I will re-check this patient in approximately one week.

UMESH G. GADARIA, M.D., F.A.C.S.

UGG/pg

713

07/22/08
BALDWIN, LINDA
OFFICE VISIT / FOLLOW-UP

Linda returns to office today for follow-up, accompanied by her daughter. Patient continues to have significant problem with both upper extremities, which is well documented at her initial visit. Patient continues to be significantly symptomatic in spite of going to therapy. However, she is not conducive to undergoing surgery. Allergies, past medical history, social history, family history and prior surgeries are reviewed and unchanged compared to previous evaluation.

PHYSICAL EXAMINATION: Shows well-developed, well-nourished, stable, healthy-appearing, obese, Black female who is well oriented in time and space. Vital signs are stable. Patient is in no acute distress. Height is 5'4", weight is 227 lbs. Head is normocephalic. ENT is within normal limits. Neck is soft, supple. Chest is clear. Heart shows NSR. Abdomen is obese. Neuro exam is grossly normal. Examination of patient's right upper extremity shows decreased sensation in median nerve distribution as compared to ulnar nerve distribution. Grind test is negative. Phalen's test is positive. Finkelstein's test is weakly positive. Allen's test is negative. Tinel's sign over the median nerve at the wrist is noted. Patient is also tender over the median nerve at the level of elbow and pronator teres area. Some weakness of FPL again is noted. So is the weakness of FDP to the index finger.

DIAGNOSIS:        1) Bilateral carpal tunnel syndrome.
                  2) Bilateral median nerve compression at level of elbow is
                     suspected and cannot be ruled out.
                  3) de Quervain's syndrome.
                  4) FCR tendonitis.

RECOMMENDATION: Patient is advised to continue therapy. Once therapy is completed, she will come back for evaluation.


UMESH G. GADARIA, M.D., F.A.C.S.


UGG/pg


709

U. GADARIA, M.D., F.A.C.S., P.A.    Plastic & Hand Surgery
1015 East 32nd Street, Ste 208    Austin, TX 78705-2700
(512) 478-0993    (512) 478-1002 fax

06/04/08
BALDWIN, LINDA
OFFICE VISIT / FOLLOW-UP

Linda returns to office today for follow-up. She continues to have problems with both her upper extremities, which is well documented at her initial visit. Allergies, past medical history, social history, family history and prior surgeries are reviewed and unchanged compared to previous evaluation.

PHYSICAL EXAMINATION: Shows well-developed, well-nourished, stable, healthy-appearing, somewhat obese, Black female who is well oriented in time and space. Vital signs are stable. Patient is in mild distress. Patient is 5'4", weighs 227 lbs. Head is normocephalic. ENT is within normal limits. Neck is soft, supple. Chest is clear. Heart shows NSR. Abdomen is soft, supple. Neuro exam is grossly normal. Examination of patient's right upper extremity shows decreased two point discrimination to 5-6 mm in all tips. Grind test is negative. Phalen's test is positive. Finkelstein's test is weakly positive. Allen's test is negative. Tinel's sign over the median nerve at the level of wrist is positive. Patient is tender over the median nerve at the level of elbow and pronator teres area. Some weakness is present in flexor pollicis longus on the right side as well as the flexor profundus tendon involving the index finger. Tenderness over the flexor carpi radialis and first dorsal wrist compartment is noted.

DIAGNOSIS: 1) Bilateral carpal tunnel syndrome.
2) Bilateral median nerve compression syndrome at the level of elbow.
3) de Quervain's syndrome.
4) Flexor carpi radialis tendonitis.

RECOMMENDATION: I reviewed patient's available chart. Patient does not want any surgical intervention. Therefore, I do not have any further to offer this patient except therapy. Once patient completes therapy, I will have no choice but to discharge her from my care. She fully comprehends this.


UMESH G. GADARIA, M.D., F.A.C.S.


UGG/pg

710

U. GADARIA, M.D., F.A.C.S., P.A.    Plastic & Hand Surgery
1015 East 32nd Street, Ste 208    Austin, TX 78705-2700
(512) 478-0993    (512) 478-1002 fax

05/14/08
BALDWIN, LINDA
INITIAL OFFICE VISIT / NEW PATIENT
DOI: 08/20/2007    **WORK RELATED**

CHIEF COMPLAINT: 1) Tingling and numbness in right and left hands. 2) Pain and discomfort, left hand/wrist. 3) Significant nocturnal symptoms of waking up 2-3 times per night.

HISTORY OF PRESENT ILLNESS: This is a 53-year-old, hypertensive, Black female who was working at Extended Stay Hotel doing multiple positions. Patient was required to perform repetitive motion during her entire work day. Patient was finally seen by Dr. Adler and evaluated. Since Dr. Adler does not accept worker's compensation, she was seen by Dr. Albercht who diagnosed this patient to have bilateral carpal tunnel syndrome. She also has been seen by Dr. Manish Patel who also apparently attempted to treat her conservatively for carpal tunnel syndrome. Patient states that steroid injections gave her significant side effects including irritation, heart palpatation, "not feeling right". Patient is currently taking Lyrica and Celebrex for her problems. On further questioning, it is quite apparent that patient did not want to consider surgical release of her carpal tunnel as treatment of choice. Patient was recently declared at MMI, which puzzles me as patient has by no means reached MMI in my opinion with persistent symptoms and pathology that could be helped with surgical intervention. Patient describes her pain as throbbing and aching, to an extent that her quality of life is affected. Patient denies any history of neck pain, chest pain, shoulder pain, elbow pain. She also complains of weakness of the right and left index finger. However, it occurs intermittently. She was treated with therapy, splinting and attempted steroid injection without any significant change in her symptoms. Patient's last nerve conduction studies completed by Dr. Powell are reported as normal.

ALLERGIES: **None known; I would qualify patient for having unusual reaction to steroids.**

MEDICATIONS: Lyrica, Celebrix.

SOCIAL HISTORY: Patient is single and confirms not being pregnant. Patient is menopausal. Patient denies use of diet pills, illicit drugs, alcohol or tobacco. Patient is in excellent health.

Continued on next page

711

No. 03-14-00457-CV

In the
UNITED STATES COURT of APPEALS
for the THIRD CIRCUIT

LINDA BALDWIN,
Plaintiff - Appellant

V.

ZURICH AMERICAN INSURANCE COMPANY,
Defendant - Appellee

On Appeal from the 261st District Court of Travis County, Texas
CAUSE NO. D-1-GN-13-001281, Gisela D. Triana, Judge Presiding

REPLY BRIEFF
WORD COUNT CERTIFICATION

To the honorable Judge of said Court: I certify that this document brief was prepared with

Microsoft Word 2010, and that, according to that program's word-count function, the sections

pursuant to rule, contain 2,300 words.

Respectfully submitted,

Linda Baldwin, Pro se
10151 Dorrell Lane
Apt. 1164
Las Vegas, NV 89166
(512) 605-7638

# CERTIFICATE OF SERVICE

I, Linda Baldwin, hereby certify that on this January 24, day of, 2015, I served a true and correct copy of Appellant's Brief, via certified mail, return receipt requested, as follows:

Third Court of Appeal
P.O. Box 12547
Austin, Texas 78711-2547

Jessica McCarthy, Attorney for the Defendant
Robert D. Stokes
Lynette Phillips
Flahive, Ogden, Latson
P.O. Box Drawer 201329
Austin, Texas 78720

Texas Department of Insurance
Division of Worker's Compensation
7551 Metro Center Drive, Suite 100
Austin, Texas 78744-1609

_____
Linda Baldwin
10151 Dorrell Lane
Apartment 1164
Las Vegas, NV 89166
512 605-7638