COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ADRIANA SANTOS, | § | No. 08-23-00317-CV |
| Appellant, | § | Appeal from the |
| v. | § | 49th Judicial District Court |
| CARLOS GARCIA, | § | of Webb County, Texas |
| Appellee. | § | (TC# 2019-CVG-001704-D1) |

## MEMORANDUM OPINION[1]

This case presents a property dispute. Appellant Adriana Santos appeals from a denial of her motion for new trial, which challenged a judgment in favor of Appellee Carlos Garcia. In two issues on appeal, Santos contends (1) the trial court abused its discretion by denying her motion for new trial based on newly-discovered evidence; and (2) the trial court erred by failing to issue findings of fact and conclusions of law. We affirm.

## I. FACTUAL BACKGROUND

Garcia filed suit against Adriana Santos f/k/a Adriana Villarreal (Santos) and Guillermo Villarreal (Villarreal) (collectively, the Defendants),[2] asserting a variety of causes of action.

---

[1] The appeal was transferred to this Court from the Fourth Court of Appeals pursuant to a Texas Supreme Court docket equalization order. Accordingly, we apply the Fourth Court of Appeals' precedent to the extent it conflicts with our own. *See* Tex. R. App. P. 41.3.

[2] The Defendants divorced in 2010.

Garcia's petition alleged he had contracted with the Defendants to purchase real property located at 3105 Potomac Loop in the City of Laredo. Garcia alleged he made seven payments over a period of approximately eleven months totaling $20,000. Those payments, he contended, were cumulatively treated as a down payment on the purchase of the property. Garcia further contended the Defendants acted as owner-financers of the property, whereby they collected his monthly mortgage payments from 2010 to 2018.

Garcia further alleged the circumstances changed thereafter. In August 2018, the Defendants sent him a letter claiming they owned the property and demanded he vacate the premises or face eviction. In response, Garcia sent a letter to Santos and her attorney asking that an error on the 2010 Warranty Deed to Secure Assumption (Warranty Deed) be corrected and that both the Warranty Deed and the 2010 Deed of Trust be filed in the Webb County Property Records. The letter also stated Garcia was the rightful owner of the property and eviction would be inappropriate without proper notice of foreclosure and a foreclosure sale.

Approximately one year later, Garcia described that he was again served with a notice to vacate the premises. The notice alleged the agreement between the parties was a month-to-month rental and Garcia was in default on the agreement. The letter also stated that Santos would file suit for forcible detainer against Garcia. After Garcia filed his second amended petition, Santos filed a counter-petition alleging she leased the property to Garcia beginning in 2009; that Garcia made payments until 2018; and that he stopped making payments in May 2019. Santos denied Garcia purchased the property from her.

During a bench trial, Garcia relied on the Warranty Deed, which contained the signatures of both Defendants (as grantors), but erroneously named Garcia as both grantor and grantee in the body of the document. Garcia also relied on a Deed of Trust naming him as the grantor and Santos

2

as the lender. Both documents were notarized by Amy Sarli. Santos denied signing the Warranty Deed. Villareal testified he did not remember whether he signed the Warranty Deed.

In July 2023, the trial court signed a final judgment that (1) decreed Garcia held superior right, title to, and interest in the property over any claims of the Defendants and any claims brought by any persons or entities claiming by, through, or under the Defendants, and (2) awarded Garcia damages and attorney's fees. The judgment also awarded Santos $19,269.10 for taxes and insurance she paid and $10,563.61 for the difference in the amount owed according to the purchase price and the amount owed by Santos.

Santos filed a motion for new trial alleging she had acquired new evidence that impeached the trial testimony of Garcia and his wife, Melissa Garcia, and went "to the very matter of Ms. Adriana Santos not signing the Deed of Trust." In her motion, Santos contended as follows:

> In this matter, Defendant Santos learned about the new evidence after the trial after someone advised her. . . . She was not only advised that the Notary and the Plaintiff and his wife were also Facebook friends with the notary, Amy Sarli and her family. . . . During the trial, Carlos Garcia and his wife Melissa Garcia, both testified that they had no idea who the notary, Amy Sarli, was other than at the time the alleged Deed of Trust was executed in 2010. During the trial Defendant Adriana Santos and Guillermo Villarreal both denied signing the purported document.
>
> Defendant Santos did not know that the Plaintiff and Ms. Sarli had a business relationship as Mr. Garcia denied that fact. This was information obtained after the fact directly from Ms. Sarli, since the case was now over to Ms. Sarli. [sic]
>
> From the new evidence, now Ms. Sarli has stated to Defendant Santos that Carlos Garcia is in fact her client. . . . Additionally, some form of relationship is supported by the Facebook association by the Plaintiff, his wife and Ms. Sarli and her family. . . .
>
> This evidence does not only impeach the Plaintiff and his wife's statements that they had no clue or no relationship with Ms. Sarli. Additionally, it goes to the crux of the case since Ms. Santos states that she had no knowledge and did not sign a Deed of Trust with regards to the property at interest in the case.
>
> This evidence was not apparent before the trial as it has been denied to by both parties, the Plaintiff and the notary. The whole case in this situation rested on the signing of alleged deed of trust by Ms. Santos.

3

Defendant Santos has attached multiple Facebook interactions by the Plaintiff and his wife with the Ms. Sarli and her family. . . .

Garcia filed a response to Santos's motion for new trial, in which he contended that Santos knew Sarli had notarized both deeds nearly four years before trial, that Santos took his pretrial deposition in which he was asked about his relationship with Sarli, and that Santos "had every opportunity to inquire further about the relationship between [himself] and Sarli from the date of the deposition to the date of trial and failed to do so."

The trial court conducted a hearing on the motion for new trial at which Garcia, his wife, Santos, and Sarli testified. At the hearing, Santos alleged her recently discovered evidence showed that, during the bench trial, Garcia and his wife lied about knowing Sarli. Garcia countered that Sarli's existence was easily discovered before trial and Santos could have subpoenaed her for trial. At the end of the hearing, the trial court denied the motion for new trial.[3] On that same day, Santos requested findings of fact and conclusions of law. She also filed a notice of past due findings of fact and conclusions of law. The trial court did not issue any findings or conclusions.

## II.   MOTION FOR NEW TRIAL

In her first issue on appeal, Santos asserts the trial court erred by denying her motion for new trial, which she based on her claim that she had obtained crucial, newly-discovered evidence that was not accessible to her before trial. She urged that the evidence would significantly alter the outcome of the case.

---

[3] By the time the trial court conducted the hearing on October 17, 2023, the motion for new trial had already been overruled by operation of law. *See* Tex. R. Civ. P. 329b(c) ("In the event an original or amended motion for new trial . . . is not determined by written order signed within seventy-five days after the judgment was signed, it shall be considered overruled by operation of law on expiration of that period.").

4

### A. Standard of review & applicable law

We review the denial of a motion for new trial for an abuse of discretion. *Matter of Marriage of Stokes*, No. 04-23-00138-CV, 2024 WL 2034740, at \*1 (Tex. App.—San Antonio May 8, 2024, no pet.) (mem. op.). To establish an abuse of discretion, the complaining party must demonstrate the trial court acted unreasonably, arbitrarily, or without reference to guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

A movant seeking a new trial based on newly-discovered evidence must demonstrate to the trial court that "(1) the evidence has come to its knowledge since the trial, (2) its failure to discover the evidence sooner was not due to lack of diligence, (3) the evidence is not cumulative, and (4) the evidence is so material it would probably produce a different result if a new trial were granted." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). Mere allegations will not suffice to obtain a new trial based on newly-discovered evidence. *Strong v. Strong*, 350 S.W.3d 759, 772 (Tex. App.—Dallas 2011, pet. denied). Instead, "admissible evidence must be introduced at a hearing on the motion for new trial establishing such essential facts as no prior knowledge on the part of the movant, the prior diligence exercised by the movant, and the nature of the newly discovered evidence." *Id.* A movant has not exercised due diligence if the effort used to procure the evidence after trial would have had the same result if that effort had been exercised before trial. *Knight v. Minter*, No. 05-11-00829-CV, 2012 WL 3234276, at \*2 (Tex. App.—Dallas Aug. 9, 2012, no pet.) (mem. op.).

### B. Analysis

We begin our analysis with the second element, which requires proof that Santos's failure to discover the new evidence sooner was not due to her lack of diligence. Although Santos testified at the hearing on her motion for new trial, she was not asked any questions about the newly-discovered evidence. Instead, she relied on her affidavit and several Facebook screenshots

5

allegedly showing that Garcia and his wife were "friends" with Sarli,[4] all of which were attached to her motion. In her affidavit, Santos stated:

> I have denied signing any documents related to . . . the property at issue in this case. In the trial, Mr. Garcia and his wife, the Plaintiffs, both denied having any relationship with the Notary, Amy Sarli. I, the Defendant, has [sic] since found out the Plaintiffs and the notary have had a working business relationship for some time. This was not known to me and had been denied on multiple occasions.

> In addition, it [sic] was made aware that the parties are Facebook friends and have commented and shared "likes" on each others' posts. This information further questions and contradicts the statements made by both Plaintiffs in trial that they had no communication or relationship with Ms. Sarli.

No evidence was offered during the hearing that this "new" evidence could not have been discovered through due diligence prior to trial on the merits. On appeal, Santos contends she exercised due diligence during trial by "extensively reviewing all available evidence and conducting thorough depositions and interrogatories." As support for this contention, she cites to Garcia's pretrial deposition testimony in which Garcia was asked about the terms of the sale, payments he made, one of the 2020 deeds, and the notary. Regarding Sarli, he was asked as follows:

> Q. And as you can see, it was also signed by an Amy Sarli, the same notary. Are you aware of that?
>
> A. Correct.
>
> Q. And you mentioned you do not know Amy Sarli, she's not a friend of yours, or you do no other business with her?
>
> A. No, she's not my friend.
>
> Q. Do you do other business with Ms. Sarli, at all?
>
> A. I have gone there to notarize papers but only for that.
>
> Q. Do you know if she does income tax returns, as well, as notary services?
>
> A. Yes, to my knowledge, she does.
>
> Q. Have you ever used her for income tax purposes?

---

[4] At the hearing on the motion for new trial, Sarli testified her Facebook page was for her business, her daughters maintained the page, the so-called "friends" were all her clients and not personal friends, and she had "a couple of thousand" Facebook "friends."

A. To tell you the truth, I don't remember. If I did, then it may have been once, but I don't remember. Not that I recall.

Although this testimony, which was not submitted to the trial court at the new trial hearing, may support an allegation that Garcia knew Sarli, it provides no support for Santos's contention that she could not discover it despite having exercised due diligence. Santos knew before trial that Sarli notarized both deeds. At his deposition, Garcia said he knew Sarli because she notarized "papers" for him. This pretrial testimony contradicts Santos's affidavit averring she had "since found out the Plaintiffs and [Sarli] have had a working business relationship for some time." During the hearing, Santos provided no explanation for why she did not further explore the nature and extent of any "working business relationship" during either Garcia's pretrial deposition or the 2023 trial, nor did she explain why she did not explore Sarli's social media before trial—the screenshots are from 2022, several years after the two deeds were notarized in 2010. On appeal, she contends this information was "not accessible through standard pretrial investigative processes due to its private nature on social media platforms, which only later became evident." However, nothing in the record supports her allegation that Sarli's Facebook page could not have been discovered before trial "due to its private nature."[5]

We conclude the trial court could have found that Santos did not show she had exercised diligence with respect to the discovery of this "new" evidence. Therefore, the trial court did not abuse its discretion by denying Santos's motion for new trial based on newly-discovered evidence. Accordingly, we overrule her first issue on appeal.

---

[5] During the hearing, Sarli testified the Facebook page was hers "[i]f you look for me."

### III. FINDINGS OF FACT & CONCLUSIONS OF LAW

In her second issue on appeal, Santos asserts the trial court erred by failing to issue findings of fact and conclusions of law regarding her motion for new trial, thereby hampering her ability to effectively challenge the trial court's decision and impeding this court's ability to conduct a thorough review.

Findings of fact and conclusions of law are required upon request in any case tried without a jury in a district or county court pursuant to Texas Rule of Civil Procedure 296. *See* Tex. R. Civ. P. 296 ("Requests for Findings of Facts and Conclusions of Law"). Several courts of appeal have nevertheless held that Rule 296 does not apply to post-judgment hearings. *See Shearn v. Brinton-Shearn*, No. 01-17-00222-CV, 2018 WL 6318450, at *11 (Tex. App.—Houston [1st Dist.] Dec. 4, 2018, no pet.) (mem. op.); *Shelton v. Shelton*, No. 07-96-0050-CV, 1996 WL 560336, at *1 (Tex. App.—Amarillo Oct. 2, 1996, writ denied); *Geisendorff v. Fenwick*, No. 04-94-00457-CV, 1995 W.L 612406, at *2 (Tex. App.—San Antonio Oct. 18, 1995, writ denied); *Johnson v. J.W. Constr. Co.*, 717 S.W.2d 464, 467–68 (Tex. App.—Fort Worth 1986, no writ).

Even if the trial court was required to file findings of fact and conclusions of law, upon proper request, following a hearing on a motion for new trial, the failure to do so does not compel reversal if the record before the appellate court affirmatively demonstrates that the complaining party suffered no harm. *Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 135 (Tex. 2017) (per curiam); *Howe v. Howe*, 551 S.W.3d 236, 244 (Tex. App.—El Paso 2018, no pet.). The test for determining harm is whether the circumstances of the case would require an appellant to guess the reason or reasons the trial court ruled against it. *Elizondo v. Gomez*, 957 S.W.2d 862, 865 (Tex. App.—San Antonio 1997, writ denied) (finding no harm because, based on trial court's statements, parties had notice of the reasons for the court's decision); *Landbase, Inc. v. T.E.C.*, 885 S.W.2d 499, 501–02 (Tex. App.—San Antonio 1994, writ denied) (failure to file findings and

conclusions harmless where the basis for the court's ruling was apparent from the record). Trial courts are encouraged to make findings and conclusions to narrow the bases of a judgment to only a portion of multiple claims and defenses, thereby reducing the number of issues an appellant must raise on appeal. *Hernandez v. Moss*, 538 S.W.3d 160, 165 (Tex. App.—El Paso 2017, no pet.). "[I]f there is only a single ground of recovery or only a single defense, the appellant does not usually have to guess at the basis of the trial court's judgment and the objective of the rule is not thwarted." *Id.*

In this case, there was a single basis for the motion for new trial—newly-discovered evidence. The factors that must be considered before granting a new trial based on newly-discovered evidence are well-settled. *See Waffle House*, 313 S.W.3d at 813 (stating four factors movant must establish). Whether the evidence here could have been discovered before final judgment was contested at the hearing. Furthermore, the trial court reminded Santos that, among other things, she had the burden to show due diligence.

Based on the arguments raised at the hearing on the motion, we conclude Santos had notice of the reasons for the trial court's decision. Therefore, we find that even if Santos was entitled to findings of fact and conclusions of law, the trial court did not err because Santos did not have to guess at the basis for the trial court's denial, and our ability to review the issue on appeal has not been impeded. Accordingly, we overrule her second issue on appeal.

## IV. CONCLUSION

For the reasons stated above, we affirm the trial court's order denying Santos's motion for new trial.

GINA M. PALAFOX, Justice

September 24, 2024

Before Alley, C.J., Palafox and Soto, JJ.

9